**UNITED STATES of America, Plaintiff,**

**v.**

**Howard SCOTT, Vernita Scott, Robert Christians, Retha Christians, John Farrell, Laureen Farrell, Dennis Baxter, Sue N. Baxter, Palmer Cotten, Alice Cotten, Harry Bachman, Anna E. Bachman, Paul C. Anschutz, Helen A. Anschutz, Clarence H. Krug, Bryan L. Dinkel, Kay Dinkel, Kenneth Lahmann, Clarence Fowler, Leonard Fowler, Melvina C. Oswald, Michael Steponik, Virginia (Faith) Steponik, Dean L. Zimmerman, Helen I. Zimmerman, Stella Nesbitt, Robert L. Craig, Mary Craig, Austin L. Covalt, Betty Covalt, and Olive M. Davisson, Defendants.**

**Civ. A. No. 90–1374–T.**

United States District Court,
D. Kansas.

March 24, 1992.

Emily B. Metzger, U.S. Atty.'s Office, Wichita, Kan. (Myron S. Lehtman, Joseph D. Rich, Eileen Penner, Housing and Civil Enforcement Section, Dept. of Justice, Civil Rights Div., Washington, D.C., on brief), for plaintiff.

Caleb Boone, Hays, Kan., John C. Woelk, Russell, Kan., for defendants.

## OPINION AND ORDER

THEIS, District Judge.

The United States, on behalf of sellers of a residential property, brings this action against the various defendants for violations of the Fair Housing Act, 42 U.S.C. § 3601, et seq. The defendants move to dismiss, contending that the Secretary of Housing and Urban Development ("HUD") failed to meet the time requirements imposed by 42 U.S.C. § 3610(g). (Doc. 38). The United States responds with a motion for partial summary judgment on the issue of liability, pursuant to Fed.R.Civ.P. 56. (Doc. 54).

## UNCONTROVERTED FACTS

The United States filed this action on behalf of homeowners Donald and Patricia Haberer, alleging that the defendants violated the Fair Housing Act by interfering with the Haberers' sale of their home to Developmental Services of Northwest Kansas ("DSNWK"), an organization that operates group homes for disabled individuals.

The single-family residence at issue is located in the Larmer Addition subdivision in Russell, Kansas. Donald and Patricia Haberer were owners of this dwelling in early 1989. In March 1989, the Haberers attempted to sell their house, and showed the house to representatives of DSNWK. DSNWK is a non-profit Kansas organization committed to providing quality services to physically and mentally disabled individuals. DSNWK seeks to deinstitutionalize disabled persons and place them in group homes so as to enable these disabled persons to enjoy a normal home environment. Group homes established by DSNWK are physically integrated into the community and are architecturally comparable to residences in existing neighborhoods.

DSNWK decided to purchase the Haberer residence for the purpose of establishing a group home for six unrelated disabled persons. On June 20, 1989, the Haberers and DSNWK entered into a real estate sales contract for the purchase of the home. The closing date was set to take place on or before October 1, 1989. At the time of contracting, the Haberer residence was subject to a restrictive covenant that required the property to remain a detached single family dwelling solely for residential purposes.

The defendants named in this action are residents of the Larmer Addition subdivision. By their counsel's letter of June 30, 1989, the defendants notified the Haberers that if the DSNWK transaction were completed, they would bring a state action to enforce the terms of the restrictive covenants and to recover monetary damages for "the depreciation of the value of their homes by virtue of the use of said property to house mentally retarded people."

On August 16, 1989, the defendants initiated an action in district court of Russell County to enjoin the sale of the Haberer residence to DSNWK, alleging that the proposed sale "for the establishment of a care home for the mentally retarded ... constitutes a violation of the said restrictive covenants relating to single-family dwellings...." The state court dismissed the action against the Haberers on October 20, 1989, holding that the plaintiffs (defendants in the present action) had failed to state a claim. The state court granted DSNWK's motion to intervene, and the case continued with DSNWK as the sole defendant. The state court held that DSNWK's proposed use of the Haberer residence did not violate the restrictive covenants, and denied the request for injunctive relief. The state court, however, refused to assess attorney's fees on the plaintiffs, reasoning that the action was not frivolous or meritless.

Following the dismissal of the Haberers from the state suit, the Haberers and DSNWK closed the sale on the property on October 20, 1989, nineteen days later than the original closing date.

On August 3, 1989—prior to the closing of the sale—the Haberers filed a housing discrimination complaint with the Department of Housing and Urban Development ("HUD"), pursuant to 42 U.S.C. § 3610(a)(1)(A), claiming that the defendants sought to block the sale of their

home to DSNWK because of the handicaps of the prospective residents. HUD undertook the investigation of the Haberers' claim under the statutory requirements of § 3610(a)(1)(B). On December 1, 1989, HUD notified the complainants and twelve of the defendants that a determination had not yet been made and that the matter was still under investigation. Thereafter, HUD attempted unsuccessfully to conciliate the complaint, and prepared a final investigative report. On June 15, 1990—more than one hundred days after the filing of the complaint—HUD issued a determination of Reasonable Cause, and filed a Charge of Discrimination with a HUD administrative law judge against the 31 defendants. The defendants, under § 3612(a), filed their election to proceed in federal district court. HUD, pursuant to § 3612(o), then authorized suit on behalf of the Haberers.

### DISCUSSION

### 1. DEFENDANTS' MOTION TO DISMISS

■ The defendants move to dismiss this action on the basis of the Secretary's failure to complete the investigation within the 100–day statutory period. The defendants argue that "the jurisdictional requirement" of 42 U.S.C. § 3610(g) mandates that the Secretary complete the reasonable cause determination within 100 days from the date of filing of the complaint or, in the alternative, notify the parties in writing of the reasons for not doing so. Because HUD failed to comply with the time requirements of the Act, argue the defendants, this action is time-barred, and the court is consequently without jurisdiction to adjudicate the case. Although the defendants frame their motion as a motion to dismiss, they rely on the affidavit of counsel and other external documentation to support their motion. In a R. 12(b)(6) motion, as the defendants' motion purports to be, the court cannot consider matters outside the pleading unless the motion to dismiss is converted into a summary judgment motion and all parties are given the opportunity to present pertinent material. Fed. R.Civ.P. 12(b); *Franklin v. Oklahoma*

*City Abstract & Title Co.*, 584 F.2d 964, 966–67 (10th Cir.1978). Because the affidavit and external documents are not necessary for the disposition of this motion, the court will confine its consideration to matters within the four corners of the pleading, and will not treat the defendants' motion to dismiss as a summary judgment motion.

Section 3610(a)(1)(B)(iv) of the Fair Housing Act provides that "the Secretary shall make an investigation of the alleged discriminatory housing practice and complete such investigation within 100 days after the filing of the complaint ... unless it is impracticable to do so." Similarly, section 3610(g) states that the Secretary "shall, within 100 days after the filing of the complaint..., determine based on the facts whether reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur, unless it is impracticable to do so." 42 U.S.C. § 3610(g). If the Secretary is unable to complete the investigation or make the reasonable cause determination within the 100–day period, the Secretary "shall notify the complainant and respondent in writing of the reasons for not doing so." 42 U.S.C. § 3610(a)(1)(C) & (g).

The facts are undisputed that the Secretary failed to complete the investigation of the Haberers' complaint or make a reasonable cause determination within the 100–day statutory period. At issue, therefore, is whether the Secretary's failure to meet the time requirements of § 3610 of the Fair Housing Act warrants a dismissal of the action. This issue is one of first impression in the majority of the Circuits, including the Tenth Circuit.

The defendants, in their 3–page brief, rely on three cases in supporting their argument that the 100–day deadline should be interpreted as a jurisdictional prerequisite or a statute of limitations. These cases, however, are inapposite to the issue presented in this case because none of them involves the failure of a government agency in meeting statutory deadlines. Rather, these cases deal with statutes of limitations governing the filing of a cause

of action by a private plaintiff. *See James v. Hafler*, 320 F.Supp. 397, 398–99 (N.D.Ga. 1970) (plaintiff failed to file a complaint within 180–day limitation period); *Warren v. Norman Realty Co.*, 513 F.2d 730 (8th Cir.) (same), *cert. denied*, 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975).[1]

The court notes at the outset that the statutory deadline imposed by § 3610 is not a *per se* time limitation. It contains an important qualification that excuses noncompliance when complying with the statutory deadline is "impracticable." This language of qualification indicates that Congress did not intend to make the 100–day statutory period mandatory. *Accord United States v. Curlee*, No. CV 91–5743 WJR (Kx), slip. op. at 2–3, 1992 WL 125151 (C.D.Ca. filed Jan. 29, 1992) ("Congress' use of the term 'impracticable' removes that time period from the realm of mandatory action under the Fair Housing Act."). This conclusion is further augmented by Congress' treatment of mandatory deadlines in other portions of the Act. For example, Congress expressly mandated private suits to be initiated within two years, and the Attorney General's actions to be filed within eighteen months. 42 U.S.C. §§ 3613 & 3614. As evident, when Congress intended that statutory deadlines operate as an absolute limitations period, there is no language of qualification. Furthermore, in cases interpreting a parallel provision in Title VII,[2] the federal courts have held that the EEOC's noncompliance with statutory language requiring the EEOC to complete its investigations within 120 days "so far as practicable" is not fatal to the complaint. *See, e.g., Tuft v. McDonnell Douglas Corp.*, 517 F.2d 1301, 1307 (8th Cir.1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 782, 46 L.Ed.2d 641 (1976); *EEOC v. Johnson Co.*, 421 F.Supp. 652, 654–55 (D.Minn.1975).

Apart from the qualification in the statutory deadline, the statute does not specify the consequences for failing to comply with the time requirements. In *Brock v. Pierce County*, 476 U.S. 253, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986), the Supreme Court held that the Comprehensive Employment and Training Act's (CETA) mandate that the Secretary of Labor "shall" issue a final determination as to the misuse of CETA funds within 120 days does not constitute a jurisdictional prerequisite or a statute of limitations. According to the Court, although the statute "speaks in mandatory language," without any qualifications, "it nowhere specifies the consequences of a failure to make a final determination" within the statutory period. Citing the well-established principle which "forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided," the Court declared:

> We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake. When, as here, there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act.

*Id.* at 260, 106 S.Ct. at 1839. As such, even in a case in which the statutory language mandates an unqualified time limitation for agency action, the Court declined to interpret the agency's failure to meet the statutory deadline as a jurisdictional infirmity or a time bar so as to rob the agency of its power to further pursue the complaint. *See also United States v. Thompson*, 98 U.S. 486, 489, 25 L.Ed. 194 (1879) ("while the sovereign was engrossed by the care and duties of his office, the public should

---

1. The defendants also cite *Humphrey v. J.B. Land Co.*, 478 F.Supp. 770 (S.D.Tex.1979), for the proposition that federal law governs the limitation period of the Fair Housing Act. This case, however, does nothing to support the defendants' contention that HUD's delay mandates a dismissal of the action.

2. 42 U.S.C. § 2000e–5(b) provides: "The Commission shall make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge or, ... from the date upon which the Commission is authorized to take action with respect to the charge."

not suffer by the negligence of his servants."); *Saratoga Sav. & Loan Assoc. v. Federal Home Loan Bank Bd.*, 879 F.2d 689, 694 (9th Cir.1989) ("The failure of an agency to comply with a statutory time limit does not divest the agency of jurisdiction."). It is thus a well established rule that a statutory deadline for agency action does not serve as a jurisdictional prerequisite or a statute of limitations unless "it both requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision." *Fort Worth National Corp. v. Federal Sav. & Loan Ins. Corp.*, 469 F.2d 47, 58 (5th Cir.1972); *St. Regis Mohawk Tribe, New York v. Brock*, 769 F.2d 37, 41–42 (2d Cir.1985).[3]

In the present case, even if—for the sake of argument—section 3610 of the Fair Housing Act were to be read as imposing a mandatory 100–day deadline, the statute is completely silent as to the consequences of HUD's noncompliance with the time limit. Because section 3610 affects public rights, this court concludes that, in accordance with the reasoning of *Pierce County*, the statute's silence on the consequences of HUD's noncompliance compels the application of the longstanding rule that an agency's failure to meet statutory deadlines does not disable the agency from further pursuing the complaint or deprive the court of its jurisdiction to adjudicate the dispute. *See Pierce County*, 476 U.S. at 259–61, 106 S.Ct. at 1839–40. The 100–day deadline was enacted to facilitate the agency's enforcement and conciliation powers and to provide speedy, effective procedures for vindicating complainants' rights. *See, e.g.,* H.R.Rep. No. 711, 100th Cong., 2d Sess. 13 (1988). To dismiss this action for the Secretary's noncompliance with the time requirements would only serve to foreclose the rights of complainants and impede the Act's goal of protecting critical public rights. *See Curlee*, No. CV 91–5743 WJR (Kx), slip op. at 4. Furthermore, as in *Pierce County*, the defendants here had a less drastic remedy for the Secretary's delay: they could have proceeded under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, to "compel agency action unlawfully withheld or unreasonably delayed." *See* 476 U.S. at 260 n. 7, 106 S.Ct. at 1839 (quoting 5 U.S.C. § 706(1)).

As such, because section 3610 of the Fair Housing Act contains the "impracticability" qualification and fails to specify the consequences of HUD's noncompliance, this court concludes that Congress did not intend the 100–day statutory deadline to operate as a jurisdictional prerequisite or a statute of limitations to justify dismissing this action. The defendants' motion to dismiss is, therefore, denied.

## 2. UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT

The United States presents a motion for partial summary judgment on the issue of the defendants' liability for violating the Fair Housing Act. Under Fed.R.Civ.P. 56(c), partial summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." As Rule 56(c) makes clear, a summary judgment motion "may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." The United States claims that the pleadings, admissions and affidavits filed in this case demonstrate, as a matter of law, that the defendants' actions to enforce the restrictive covenant were taken

---

3. The Supreme Court, in *Pierce County*, implicitly approved the *Fort Worth National* line of precedent. Conceding that the Court has never expressly adopted the holding in *Fort Worth National* and its siblings, the Court nevertheless stated that "our decisions supply at least the underpinnings of those precedents." *Pierce County*, 476 U.S. at 259–60, 106 S.Ct. at 1838–39. The Court disagreed with the Ninth Circuit's conclusion, in *City of Edmonds v. United States Dept. of Labor*, 749 F.2d 1419, 1423 (9th Cir. 1984), that the *Fort Worth National* line of precedent has been overruled *sub silentio* by *Mohasco Corp. v. Silver*, 447 U.S. 807, 815–26, 100 S.Ct. 2486, 2491–97, 65 L.Ed.2d 532 (1980). *Mohasco,* according to the Court, involved the untimeliness of an aggrieved individual and not a government agency, and, thus, did not implicate the principle that disfavors sacrificing the public interest because of the omissions of public officers.

because of the handicaps of the prospective residents of the Haberer home.

In responding to the United States' motion for partial summary judgment, the defendants did not challenge the statement of uncontroverted facts presented by the United States. The defendants chose merely to insert two "additional undisputed facts": (1) the state court found that the state action against the Haberers was not frivolous or brought in bad faith; and (2) the state court determined that the plaintiffs' appeal was not frivolous, and refused to award attorney's fees to the Haberers. Because the United States' statement of uncontroverted facts is not contested, it shall be deemed admitted. D.Kan.R. 206(c) ("All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.").

The defendants, in opposing the United States' motion, urge the court to "overrule the motion ... on the grounds that the basis sought to be established by the United States by use of the learned District Judge of Russell County District Court is stretching things a bit too far." The defendants' characterization of the United States' argument is, unfortunately, off the mark. Indeed, the government concedes that the state court's decision was not binding on this federal action because of the lack of mutuality of parties. What the United States essentially asserts is that, independent of the state court's decision, there is no genuine issue of material facts in this case and the court should conclude as a matter of law that the defendants have violated the Fair Housing Act.

As the uncontroverted facts indicate, the defendants embarked on efforts to block the sale of the Haberer home to DSNWK because of the handicaps of the prospective residents. The defendants feared that these handicapped individuals would cause a depreciation in property values. In the letter of June 30, 1989, written by counsel, the defendants acknowledged that the sale of the Haberer home was "for the purpose of converting it to a home for mentally

retarded people," and threatened to sue the Haberers "for damages suffered by these property owners individually from the depreciation of the value of their homes *by virtue of* the use of said property to house *mentally retarded people.*" (Emphases added.) That the defendants interfered with the sale to prevent disabled individuals from residing in the home is the only reasonable conclusion that can be drawn.

Although the defendants might argue that they opposed the sale because the Haberer home would be used to house six *unrelated* individuals in violation of the restrictive covenant, such an argument is disingenuous. It is the fact of the disability of the occupants, and not their unrelatedness, that gave the defendants concern over the depreciation of their property values. Such a conclusion is borne out by the uncontroverted facts, and the court concludes that no reasonable juror could find otherwise. There is, thus, no genuine issue of material facts. What remains to be resolved, therefore, is the legal question of whether the defendants' actions in interfering with the Haberer sale because of the handicaps of the prospective occupants constitutes a violation of the Fair Housing Act.

The Fair Housing Act explicitly makes it unlawful to discriminate in the sale of a dwelling or "to otherwise make unavailable or deny" such dwelling to any buyer because of the handicap of "a person residing in or intending to reside in that dwelling after it is sold." 42 U.S.C. § 3604(f)(1)(B). In addition, the Act makes it unlawful to "coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, ... or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [the Act]." 42 U.S.C. § 3617. It is also unlawful to "make, print or publish, or cause to be made, printed or published, any statement ... that indicates any preference, limitation, or discrimination based on ... handicap ... or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c). Finally, the Act prohibits dissemination of false information

about the availability of housing because of a person's handicap. 42 U.S.C. § 3604(d).

Under the Act, mental retardation—the disability suffered by the prospective residents of the Haberer home—is protected from discrimination. 24 C.F.R. § 100.-201(a)(1). The defendants do not dispute that the prospective occupants of the Haberer home are mentally disabled individuals.[4] Although the Haberers are not themselves disabled, the Act allows them to be beneficiaries of the proscription against handicap discrimination. As sellers of a home intended to house handicapped individuals, the Haberers are "aggrieved person[s]" under the Act because they "claim[ ] to have been injured by a discriminatory housing practice." 42 U.S.C. § 3602(i)(1). That plaintiffs may sue under the Fair Housing Act for injuries they have suffered as a result of housing discrimination against third parties is a well established principle. *See Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) (white tenants of apartment complex alleged that their landlord discriminated against non-white applicants); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 103 n. 9, 99 S.Ct. 1601, 1609 n. 9, 60 L.Ed.2d 66 (1979) (municipality alleged injury from discriminatory real estate practices). In the instant case, because the Haberers were injured as a result of discrimination against the prospective residents, they are "aggrieved person[s]" within the meaning of the Act. *See Gladstone, Realtors*, 441 U.S. at 96–97, 99 S.Ct. at 1606–07 (standing under the Fair Housing Act extends "to the broadest class of plaintiffs permitted by Art. III").

Having determined that the Haberers are intended beneficiaries of the Act, the court next addresses whether the defendants' actions in interfering with the housing sale violates the Fair Housing Act. Specifically, does the enforcement of restrictive covenants for the purpose of discriminating against handicapped individuals constitute a violation of the Act?

Although the Tenth Circuit has not addressed this issue, several federal courts have held that the Fair Housing Act prohibits the enforcement of restrictive covenants that discriminate, or have the effect of discriminating, on the basis of handicap. In *Casa Marie, Inc. v. Superior Court of Puerto Rico for Dist. of Arecibo*, 752 F.Supp. 1152, 1168–69 (D.Puerto Rico 1990), the court held that the Fair Housing Act was violated by the defendants' enforcement of a neutral restrictive covenant in state court to terminate the operation of a home for the handicapped. The court recognized that discrimination proscribed by the Act could occur through the use of state court proceedings to enforce restrictive covenants. *Id.; see also Northside Realty Assocs., Inc. v. Chapman*, 411 F.Supp. 1195, 1199–1200 (N.D.Ga.1976).

The above holdings comport with the legislative history of the Act. In discussing the scope of the amended Act, the House Committee on the Judiciary stated that the Act "is intended to prohibit special restrictive covenants or other terms or conditions, or denials of service because of an individual's handicap and which ... exclud[e], for example, congregate living arrangements for persons with handicaps." H.R.Rep. No. 711, 100th Cong., 2d Sess. 23–24 (1988) U.S.Code Cong. & Admin.News 1988, pp. 2173, 2184, 2185 ("House Report"). As the House Report explains, the Act protects against efforts to "restrict the ability of individuals with handicaps to live in communities."[5] *Id.* at 24.

---

**4.** The facts are uncontroverted that the intended residents of the Haberer home are handicapped individuals within the meaning of the Act. Section 3602(h) defines a handicapped individual as someone who (1) suffers from a physical or mental impairment which substantially limits one or more of such person's major life activities; or (2) has a record of having such an impairment; or (3) is regarded as having such an impairment, whether or not the impairment actually exists. As the defendants have not raised any question on the disability of the prospective residents, the court concludes that these residents meet the statutory definition of "handicapped individuals."

**5.** The legislative history of the amended Fair Housing Act reflects the national policy of deinstitutionalizing disabled individuals and integrating them into the mainstream of society. *See, e.g.,* Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 6000(a)(9) ("it

As such, the defendants' actions fall within the Act's proscription against handicap discrimination. By attempting to enforce a restrictive covenant to prevent handicapped individuals from residing in their neighborhood, as the uncontroverted facts reveal, the defendants have "otherwise ma[de] unavailable or den[ied]" a dwelling to DSNWK because of the handicap of persons "intending to reside in that dwelling after it is sold." 42 U.S.C. § 3604(f)(1)(B). The phrase "otherwise make unavailable or deny" has been broadly construed to include "*all* practices which [make unavailable or deny] dwellings on prohibited grounds." *United States v. Youritan Constr. Co.*, 370 F.Supp. 643, 648 (N.D.Cal.1973), (emphasis added), *modified as to relief and aff'd*, 509 F.2d 623 (9th Cir.1975). Given its breadth, the phrase would reasonably encompass the act of enforcing a neutral restrictive covenant through the judicial system for the purpose of denying equal housing opportunities to disabled individuals.

Similarly, the defendants' acts of issuing a letter threatening to sue the Haberers for selling to DSNWK, and initiating a lawsuit constitute "coerc[ing], intimidat[ing], threaten[ing] or interfer[ing]" with the Haberers "on account of [their] having aided or encouraged" the handicapped prospective residents in the exercise of their right to equal housing opportunity without regard to handicap. 42 U.S.C. § 3617. Moreover, the letter violates § 3604(c), which prohibits making, printing or publishing any statement indicating a proscribed preference, limitation or discrimination. In addition, the defendants have violated § 3604(d) by their discriminatory representations on the availability of the dwelling. According to the HUD regulations, § 3604(d) is violated by enforcing a restrictive covenant that precludes the sale of a dwelling on prohibited grounds, or representing that such sale is precluded by the covenant. *See* 24 C.F.R. § 100.80(b)(2) & (3).[6]

Although the defendants contend that they should not be liable because they did not act in bad faith or out of any malice towards the handicapped individuals, such an argument is untenable. In establishing intentional discrimination under the Fair Housing Act, it is not necessary to demonstrate malice or ill will towards handicapped individuals. *See United States v. City of Birmingham*, 538 F.Supp. 819, 830 (E.D.Mich.1982), *aff'd and modified as to relief,* 727 F.2d 560 (6th Cir.), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). Nor is it necessary to show that the defendants' actions were solely motivated by the handicap of the prospective residents. *See Asbury v. Brougham*, 866 F.2d 1276, 1279 (10th Cir.1989); *Baxter v. City of Belleview*, 720 F.Supp. 720, 732 (S.D.Ill.1989). Whether motivated by animus, paternalism, or economic considerations, intentional handicap discrimination is prohibited by the Act. *See City of Birmingham*, 538 F.Supp. at 830 ("A person who attempts to prevent a black family from buying the house next door because the presence of a black family on the block will decrease property values violates the Fair Housing Act just as assuredly as a person who attempts to prevent a black family from buying the house next door because that person dislikes all black people."); *McNeil v. McDonough*, 515 F.Supp. 113, 129 (D.N.J.1980) (Discrimination forbidden by Title VII "may be the consequence of the highest and most salutary motives, but the legal 'intent,' not the motive, is what controls."), *aff'd,* 648 F.2d 178 (3d Cir.1981). The court concludes, there-

---

is in the national interest to offer persons with developmental disabilities the opportunity to the maximum extent feasible, to make decisions for themselves and to live in typical homes and communities where they can exercise their full rights and responsibilities as citizens"); the Rehabilitation Act of 1973, 29 U.S.C. § 701 ("The purpose of this Act ... is to develop and implement ... comprehensive and coordinated programs of vocational rehabilitation and indepen-

dent living, for individuals with handicaps in order to maximize their ... integration into the workplace and the community.").

**6.** As an agency charged with administering the Fair Housing Act, pursuant to § 3614a, HUD's interpretation of the statute is entitled to considerable deference. *E.g. Gladstone, Realtors*, 441 U.S. at 107, 99 S.Ct. at 1611.

fore, that the defendants' actions amount to a violation of the Fair Housing Act. The United States' motion for partial summary judgement on the issue of liability is granted.

IT IS BY THE COURT THEREFORE ORDERED that Defendants' Motion to Dismiss (Doc. 38) is hereby denied, and Plaintiff United States' motion for partial summary judgment (Doc. 54) is hereby granted.