**MICHIGAN PROTECTION AND ADVOCACY SERVICE, INCORPORATED; William Carleton, by Tabako Carleton, guardian; Christopher McClain, by Tess Dubb, guardian; Beverly Brooky; Rose Jeanette; John Spencer, by Oakdale Guardianship, Incorporated, guardian; Louise Crowell; Dixie Edmonds; Sandra Foster, by Macomb Oakland Guardianship, Incorporated, guardian; Cynthia Wendt, by Shirley Daroci, guardian; Martin Briski, by Lydia Briski, guardian; Rochelle Schafer, by Linda Binder Deutch, guardian; Warren Ufford, by David Ufford, guardian, Plaintiffs–Appellants,**

Fania Antonias; Virginia Mallan, Plaintiffs,

v.

**Peggy BABIN; Florence Hammonds; Nosh Ivanovic; Katrina Ivanovic; Scott Babin; John R. Kersten; Town & Country–Sterling Heights, Incorporated, doing business as Century 21 Town and Country Realtor; Thomas G. Fortin; Paul V. Hebert, Defendants–Appellees,**

Michelle Rhodes; Alan Rhodes; Samuel Thompson; Joseph Maguire; Shelby Township, Defendants.

No. 92–2073.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 14, 1993.

Decided March 2, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied April 13, 1994.

Stewart R. Hakola (argued and briefed), Michigan Protection & Advocacy Service, Marquette, MI, Calvin A. Luker, Livonia, MI, for plaintiffs-appellants.

Kevin F. O'Shea (argued and briefed), Butzel, Long, Gust, Klein & Van Zile, Detroit, MI, Samuel M. Thompson, Rochester, MI, for Peggy Babin.

Thomas W. Cranmer (briefed), Miro, Miro & Weiner, Donald K.S. Petersen (argued), Bloomfield Hills, MI, for Florence Hammonds.

Kevin A. McNulty, Troy, MI, for Nosh Ivanovic and Katrina Ivanovic.

Samuel M. Thompson, Rochester, MI, for Scott Babin.

James V. Carnago (argued and briefed), Laura M. Janeczko–Beam, Troy, MI, for John R. Kersten.

James V. Carnago, Laura M. Janeczko–Beam, James S. Vecchio, Troy, MI, for Town & Country–Sterling Heights, Inc.

Michael K. Lee, Mark S. Koppelman (briefed), Southfield, MI, for Thomas G. Fortin.

Mark S. Koppelman, Southfield, MI, for Paul V. Hebert.

David K. Flynn, Leslie A. Simon (briefed), U.S. Dept. of Justice, Civil Rights Div., Appellate Section, Washington, DC, for U.S. amicus curiae.

Before: BOGGS and SUHRHEINRICH, Circuit Judges, and BROWN, Senior Circuit Judge.

BOGGS, Circuit Judge.

The plaintiffs filed several civil rights claims against the defendants, alleging that the defendants had denied and/or interfered with the plaintiffs' right to equal access to housing. The plaintiffs claim that their right

to housing was violated when a house owner, who was negotiating with a state agency to rent the house as a group home for mentally disabled adults, sold the house at a profit to neighbors of the property. The plaintiffs allege that the seller's motivation for selling and the neighbors' motivation for buying the house were discriminatory. The plaintiffs brought suit against the seller, a real estate agency, and the group of neighbors who helped raise the money to purchase the property.

On a motion for summary judgment, the district court ruled against the plaintiffs on three separate grounds. The court found that the defendants (1) did not discriminate or otherwise make unavailable a dwelling to the plaintiffs; (2) did not discriminate against the plaintiffs in the course of a real estate-related transaction; and (3) did not interfere with the exercise and enjoyment of plaintiffs' right to fair housing. 799 F.Supp. 695 (E.D.Mich.1992). The district court also dismissed the plaintiffs' 42 U.S.C. §§ 1985 and 1986 claims, their pendent state claims, and denied their cross-motion for summary judgment. *Ibid.* We hold that a proper interpretation of the text of the Fair Housing Amendments Act of 1988 does not reach the actions of the defendants in this case and we therefore affirm the district court's grant of summary judgment for the defendants.

## I

In May 1988, the defendant Florence Hammonds was working as a real estate agent for Century 21 Town and Country Realty ("Century 21"). At that time, a couple listed their house ("24 Mile Road property" or "the house") with Century 21 and Hammonds marketed the property on their behalf. After eight months on the market, however, Hammonds had not sold the house.

In November 1988, while acting as the broker for the house, Hammonds contacted the Macomb–Oakland Regional Center ("MORC"), a state agency. Hammonds asked MORC if it would be interested in leasing the property as a group home for mentally disabled adults if she purchased it. MORC indicated that it was interested in leasing the property.

In early February 1989, Hammonds purchased the house for $95,000. She paid a broker's commission to Century 21 as the buyer, but recouped part of the commission as the real estate agent. Hammonds also took out a home equity loan and a mortgage to finance the purchase.

According to Hammonds, in March 1989 MORC indicated that it would execute a written lease and begin paying rent to Hammonds by the middle of May 1989. The leasing arrangements, however, did not progress as quickly as planned. In April 1989, MORC informed her that the lease could not be executed until July 15, 1989, because MORC was still waiting for various state agencies to approve the arrangement.

Meanwhile, on April 26, MORC officials sent out a letter to residents in the vicinity of the 24 Mile Road property to inform them that the house would be used as a group home. On April 28, 1989, Peggy Babin, a resident of the area, called Hammonds to arrange a meeting with her. On April 29, 1989, Babin and five other neighbors met with Hammonds at Hammonds's house to discuss the lease. At the meeting, Hammonds attempted to allay the neighbors' fears about having a group home in their neighborhood, but she also insisted on going through with her lease with MORC.

The neighbors[1] then began a campaign to prevent the property from becoming a group home. Peggy Babin organized a petition drive to stop the group home, contacted several newspapers about the drive, and prepared a "mailing" about group homes. This mailing included 1) a newspaper article about a resident of a group home who had raped a nine-year old girl; 2) a list of addresses of people to write to express concern about the group home; 3) MORC's April 26 letter with a note indicating that MORC was talking about a group home such as the one discussed in the enclosed newspaper article; 4)

---

1. This group consisted of Scott and Peggy Babin, Nosh and Katrina Ivanovic, Thomas Fortin, and Paul Hebert.

a sheet entitled "Group Homes: Things You Should Know" that stated that the neighborhood would no longer be safe and property values would plummet if a group home was situated in the neighborhood; and 5) form letters to send to Century 21 and MORC to express concern about the group home.

After the neighbors began their petition drive, Hammonds initiated a conversation with John Kersten, the owner and sole shareholder of Century 21. Hammonds mentioned that she was concerned about the reaction of the neighbors to the proposed use of the 24 Mile Road property. Kersten indicated that Hammonds would have to handle the situation herself.

On the morning of May 12, Hammonds met with MORC representatives about hastening the leasing arrangement. According to Hammonds, the representatives promised to inquire about the delay in the approval of the lease and to call her that same day with an answer. They did not call her. Also, on May 12 a town meeting was held and approximately one hundred people showed up to express their concerns about the group home. Hammonds did not attend the meeting.

On May 13, Nosh Ivanovic offered Hammonds $100,000 for the house. On May 15, Hammonds made a counteroffer of $104,000. Ivanovic was unable to raise the additional cash, so Scott Babin provided the funds. Scott Babin, with the help of Paul Hebert, then solicited funds from the neighbors to offset his donation to Ivanovic. Thomas Fortin donated $500.

The closing for the 24 Mile Road property took place on May 19. No one from Century 21 was at the closing and Hammonds did not pay a commission to the agency. Hammonds, however, used closing documents bearing the Century 21 logo, and the forms were pre-printed with Kersten's signature as the broker for the sale.

Based on these facts, the plaintiffs filed this suit against Hammonds, Kersten, Century 21, and the neighbors. The plaintiffs allege that each of the defendants violated 42 U.S.C. § 3604(f)(1), which makes it illegal for a person to discriminate in the sale or rental,

or to otherwise make unavailable or deny a dwelling to a person because of a disability. The plaintiffs also contend that Hammonds, Kersten, and Century 21 discriminated against the plaintiffs in a real estate-related transaction, in violation of 42 U.S.C. § 3605. Finally, the plaintiffs claim that all of the defendants interfered with the plaintiffs in the exercise of their rights to housing, in violation of 42 U.S.C. § 3617.

## II

This court reviews *de novo* the district court's grant of the defendants' motion for summary judgment. *Baggs v. Eagle–Picher Indus., Inc.,* 957 F.2d 268, 271 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 466, 121 L.Ed.2d 374 (1992). This court will affirm the district court's order only if we determine that the pleadings, affidavits, and other submissions show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We view all evidence before us in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## III

The plaintiffs allege that the defendants violated the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3604(f)(1). The FHAA makes it illegal for a person

[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a

dwelling to any buyer or renter because of a handicap of

(A) that buyer or renter;

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that buyer or renter.

### A. Hammonds

The plaintiffs contend that Hammonds violated § 3604(f)(1) because she sold the house for financial gain knowing that the buyers were actively opposed to the group home. Whatever Hammonds's motivation, the transaction was exempt from § 3604.

Section 3603(b) exempts sales or rentals of single family homes by the owner if: (1) the owner does not own more than three such homes at any one time; (2) in the case of a sale of a dwelling where the owner was not occupying the residence at the time of the sale, or was not the most recent occupant of the dwelling, the owner has not made a similar sale within the past twenty-four months; (3) the owner does not have a beneficial interest in any part of the proceeds from the sale or rental of more than three such dwellings; and (4) the dwelling was sold (A) without the use "in any manner" of the sales or rental services or facilities of a real estate broker, agent, or sales person, and (B) the owner did not publish, post, or mail any advertisement or written notice that included discriminatory language. 42 U.S.C. § 3603(b). The statute also provides that "nothing in this proviso shall prohibit the use of attorneys, escrow agents, abstractors, title companies, and other such professional assistance as necessary to perfect or transfer the title...." 42 U.S.C. § 3603(b).

The plaintiffs contend that Hammonds does not qualify for the exemption because she never lived in the house and her sole motive was to turn a quick profit on the real estate deal. The plaintiffs also argue that Hammonds does not fall within the § 3603(b) exemption because the sale of the property necessarily involved the use of a real estate agent since Hammonds is licensed as a real estate agent.

■ As the district court found, Hammonds's sale of the house falls squarely within § 3603(b). First, Hammonds only owned two dwellings, her principal place of residence and the 24 Mile Road property. Second, Hammonds had not made a similar sale in the past twenty-four months. Third, although Hammonds had earned commissions from the sales of other homes, this is not equivalent to owning an interest in the property, or having "title to or any right to all or a portion of the proceeds from the sale or rental of" more than three dwellings. We read this provision as excluding only those people who have some claim to proceeds of a sale because of their interest in the fee simple of the property. Since a contract for commissions does not affect the state of the property title, *see, e.g., Kelley v. Marlin,* 714 S.W.2d 303, 305 (Tex.1986), Hammonds's occupation as a real estate agent does not disqualify her from the exemption.

■ Fourth, as the district court found, Hammonds did not "in any manner" use a real estate agency. The plaintiffs allege that Hammonds used the services of a real estate broker when she used a title company that Century 21 also used for its closings; used closing documents bearing the Century 21 logo and Kersten's pre-printed signature as the broker; and consulted Kersten about her problems with the neighbors.

Even though the statutory language, "in any manner," is very broad, Hammonds did not use the "facilities" or "services" of a real estate service or broker within the meaning of the FHAA. Although Hammonds used the Century 21 forms, she acquired the documents directly from Transamerica Title Company. Transamerica had these pre-printed forms in its possession because Century 21 frequently used the services of the title company. Transamerica, however, provided and assumed responsibility for the pre-printed forms. Finally, at the time of the sale, the 24 Mile Road property was not listed with Century 21, the Transamerica employees did not think that Kersten was involved in the sale, and Century 21 did not receive any commission from the sale. Consequently, the closing documents appear to be nothing

more than form papers necessary to perfect title. As such, Hammonds's use of these documents does not vitiate the exemption provided by § 3603(b).

█ The plaintiffs also argue that by operation of Michigan licensing laws, Hammonds cannot be exempt under § 3603(b). Michigan requires that "[a] sale of real estate by a real estate salesperson, other than his or her principal residence, shall be deemed to be done as a principal vocation of the salesperson and the sale shall be through a licensed broker." 1991 Mich.Legis.Serv.R. 339.-22319(2) (West). The plaintiffs argue that this regulation compels the conclusion that Hammonds was acting as a real estate agent when she sold the 24 Mile Road property to the Ivanovics.

We disagree. Whatever effect this regulation may have on Michigan's state law prohibiting discrimination in fair housing or Hammonds's liability for possibly violating it, we do not believe that a state regulation can negate the clear intent of a federal statutory provision. *See Marr v. Rife,* 503 F.2d 735, 740 (6th Cir.1974) (federal, not state, law controls decisions under the Fair Housing Act). Congress's intent was to allow, up to a certain point, an individual owner to dispose of her property as she wished. *See, e.g.,* 114 Cong.Rec. S2,239 (daily ed. Mar. 5, 1968) (comments of Sen. Baker). Consequently, the district court was correct in granting summary judgment on the § 3604(f)(1) claim against Hammonds, since she is exempt from its terms.

Since we hold that Hammonds's sale is exempt under § 3603(b), we need not reach the issue of whether the district court applied the correct discriminatory impact and discriminatory intent tests when the court determined that selling a house to the only offeror was not discriminatory.

### B. Kersten and Century 21

█ The plaintiffs argue that Kersten and Century 21 are liable under § 3604(f)(1) on a theory of direct and/or vicarious liability. For the plaintiffs to succeed on this claim, this court must find that either Century 21 was directly involved in the transaction or that Hammonds was a real estate agent within the meaning of § 3603(b) and acting within the scope of her employment. Restatement (Second) of Agency §§ 219, 220 (1957).

The plaintiffs rely on *Marr v. Rife, supra,* to support their argument. In *Marr,* we held that an owner of a real estate agency could be found liable for his agents' acts even if the owner did not approve of or direct the agents' actions. 503 F.2d at 742. In that case, the real estate agents were opposed to selling a house to the Marrs because they were African–American and the agents represented to the Marrs that the house was under contract when, in fact, it was not. *Id.* at 737.

*Marr,* however, is distinguishable from the present case. In *Marr,* the property was offered for sale by the real estate agency, the agents directly committed an illegal act, and the real estate business was liable under agency principles. *Ibid.* Here, there is no evidence that Century 21 listed the 24 Mile Road property while Hammonds was the owner. In her deposition, Hammonds stated that she considered the sale of the 24 Mile Road property a private transaction. Also, the closing documents indicate that Century 21 did not receive a commission from the sale. Moreover, Kersten testified that when Hammonds asked him for advice on the sale of the home, Kersten responded that Hammonds would have to handle it herself. This evidence indicates that Century 21 had no direct involvement in the transaction and that Hammonds was not acting as an agent for Century 21 during the sale of the 24 Mile Road property.

In response to this evidence, the plaintiffs rely on the pre-printed forms used during the closing. As noted above, this is merely a scintilla of evidence on the issue of Hammonds's agency status, and the defendants have presented evidence that rebuts any inference of agency on Hammonds's part. Consequently, the district court was correct to grant summary judgment for Kersten and Century 21 on the § 3604(f)(1) claim.

### C. The Neighbors

The plaintiffs contend that the neighbors are liable under § 3604(f)(1) because they

solicited and contributed money to support the Ivanovics' purchase of the house.[2] According to the plaintiffs, the neighbors' actions fall within the "otherwise make unavailable" language of the statute.

We first note that Congress intended § 3604 to reach a broad range of activities that have the effect of denying housing opportunities to a member of a protected class. *See, e.g., South–Suburban Hous. Ctr. v. Greater South–Suburban Bd. of Realtors,* 935 F.2d 868, 882 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 971, 117 L.Ed.2d 136 (1992). When Congress amended § 3604(f) in 1988, it intended the section to reach not only actors who were directly involved in the real estate business, but also actors who directly affect the availability of housing, such as state or local governments. H.R.Rep. No. 711, 100th Cong., 2d Sess. 22 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2183; *cf. Marbrunak, Inc. v. City of Stow,* 974 F.2d 43 (6th Cir.1992).

The question presented by the plaintiffs' claim is to what extent the phrase "otherwise make unavailable" reaches out to make unlawful actions that are removed from the central event of purchasing or leasing a dwelling but nonetheless have some effect on a person's ability to acquire housing. In *Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277 (3d Cir.1993), the court faced a similar issue. In that case, Growth Horizons provided community living arrangements for mentally disabled individuals. Growth Horizons signed a contract with Delaware County to place fifteen people in community living arrangements, and Growth Horizons leased and renovated four sites for this purpose. *Id.* at 1279.

Growth Horizons opened one of the sites, but a state monitoring agency expressed concern about Growth Horizons's management of the site. The state agency recommended that Delaware County not permit Growth Horizons to open any other site unless the first site met appropriate standards. Delaware County then canceled its contract with

Growth Horizons, after giving the required notice. *Ibid.*

Growth Horizons sued Delaware County under the FHAA, alleging, among other things, that Delaware County's failure to abide by the now-cancelled contract and to assume leases on the sites was "the result of political pressure emanating from bias against the handicapped." *Ibid.* The district court held that "the County's refusal to assume the leases 'in no way makes unavailable or denies housing to mentally retarded individuals'. . . ." *Id.* at 1282 (internal quotation marks omitted).

The court of appeals, however, found that the district court had overstated the standard under § 3604(f)(1), but that Growth Horizons did not have a meritorious claim under the FHAA. The court found that "[t]he conduct and decision-making that Congress sought to affect was that of persons in a position to frustrate such choices—primarily, at least, those who own the property of choice and their representatives." *Id.* at 1283.

■ We agree with the Third Circuit that Congress's intent in enacting § 3604(f)(1) was to reach property owners and their agents who directly affect the availability of housing for a disabled individual. However, the scope of § 3604(f)(1) may extend further, to other actors who, though not owners or agents, are in a position directly to deny a member of a protected group housing rights. *Cf. Burrell v. City of Kankakee,* 815 F.2d 1127, 1130–31 (7th Cir.1987) ("plaintiffs['] claims are not cognizable under the Fair Housing Act since defendants' conduct did not directly affect the availability of housing to minorities").

■ The crucial issue of interpretation with respect to § 3604(f)(1), as well as other sections of the act, is whether normal economic competition can constitute a violation under the act. In a certain semantic sense, every purchase or sale "directly affects" everyone else who may be in competition. Sometimes that effect is very small, as when

**2.** At oral argument, counsel for the plaintiffs acknowledged that the neighbors' letter-writing campaign, town meeting, media contact, and

group discussions are activities protected by the First Amendment. Accordingly, these actions are not in issue.

one buys a highly fungible and readily available commodity, such as a gallon of gasoline or a pound of potatoes. However, if the commodity is artificially scarce or unique, the normal process of purchase and competition can have a much greater effect. If a motorist is in line for the last gallon of gasoline available under price regulations, that purchase will effectively make the commodity unavailable to the next person in line. If we secure the last good table at a fancy restaurant by bribing the maitre d', we may have effectively prevented another person, even a member of a protected class, from enjoying the public accommodation at that moment.

Real estate, of course, is the quintessential unique commodity. If we are able to purchase a house because we can offer more money, we have in one sense "denied" it to everyone else. But that is not generally the way the word is used. Only hyper-technical economists would normally say that we interfere with another person's rights when we purchase a house in fair economic competition, just as most people would not say that we "directly affect" a merchant's livelihood when we choose to patronize A, rather than B, no matter what the motive.

Given this general usage of the words, it would be a huge and unwarranted expansion of the act, with no hint of any congressional authority, to say that every purchaser or renter of property is liable under the act if his motives are found unworthy in such a purchase or rental transaction. The entire language of the act, as well as the evils the act is aimed at as described in hearings and debates, was designed to target those who owned or disposed of property, and those who, in practical effect, assisted in those transactions of ownership and disposition.

Consequently, however broad § 3604(f) may be, the scope of the statute cannot encompass the acts of the neighbors in this case. Their action in collecting money to buy the house is not direct enough to fall within the terms of § 3604(f)(1). Under the plaintiffs' interpretation of the statute, *any* action

that results in the unavailability of housing for protected classes is actionable, no matter how attenuated. We decline to extend the scope of § 3604(f)(1) to accommodate the plaintiffs' claims in this case.

The plaintiffs, however, argue that they have presented direct evidence of the neighbors' discriminatory intent, and are thus entitled to summary judgment on the § 3604(f)(1) claim against the neighbors. They cite *United States v. Scott,* 788 F.Supp. 1555 (D.Kan.1992) to support their expansive reading of § 3604(f)(1). In *Scott,* the United States sued the residents of a subdivision who attempted to block the sale of a home to a purchaser who intended to use the house as a group home. The neighbors in that case sued in state court to enforce a covenant relating to single-family dwellings. *Id.* at 1556. The district court granted summary judgment to the United States on the grounds that the FHAA prohibited the enforcement of restrictive covenants that discriminate, or have the effect of discriminating, on the basis of disability. *Id.* at 1561.

*Scott,* however, does not support the plaintiffs' claims in this case. As noted above, Congress intended § 3604(f)(1) to apply to restrictive covenants and zoning laws. If state and local governments cannot enforce discriminatory land use regulations, *see United States v. City of Parma,* 661 F.2d 562 (6th Cir.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1972, 72 L.Ed.2d 441 (1982), it follows that private citizens cannot enforce restrictive covenants for discriminatory purposes.[3] The plaintiffs in this case, however, have not adduced any evidence that indicates that Congress intended to include their particular claims within the scope of § 3604(f)(1).

The plaintiffs argue that there is direct evidence of the neighbors' discriminatory intent and that this evidence warrants summary judgment on their behalf. The fatal flaw in this argument, however, is that the plaintiffs have failed to address the scope of the statute before advancing to the merits of their discrimination claim. An act done with

---

**3.** The plaintiffs also cite *Phillips v. Butler,* Equal Oppt. Hous. 15,998.179 (N.D.Ill.1981) to support their argument. *Phillips,* like *Scott,* turns on the discriminatory use of a covenant by a neighbor-

hood association. Consequently, this case also fails to support the plaintiffs' argument for a sweeping interpretation of § 3604(f)(1).

discriminatory intent is not illegal unless it falls within the scope of a federal statute or runs afoul of the Constitution. Thus, patronizing a concert by Joan Baez but not one by Tina Turner is not actionable, even if done for discriminatory reasons. We hold that the plaintiffs' claim against the neighbors is not cognizable under § 3604(f)(1) because the neighbors' actions did not directly affect the availability of housing or impede a transaction that the plaintiffs were undertaking. Accordingly, the district court was correct in granting summary judgment to the neighbors on this claim.

We conclude that the district court was correct in granting summary judgment to all the defendants on the plaintiffs' § 3604(f)(1) claims.

IV

■ The plaintiffs also argue that the district court erred when it granted summary judgment to Hammonds, Kersten, and Century 21 on the plaintiffs' 42 U.S.C. § 3605 claim. This section of the FHAA provides, in pertinent part:

(a) **In general**

It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.

(b) **Definition**

As used in this section, the term "residential real estate-related transaction" means any of the following:

(1) The making or purchasing of loans or providing other financial assistance—

(A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or

(B) secured by residential real estate.

(2) The selling, brokering, or appraising of residential property.

■ To state a claim for relief under § 3605, the plaintiffs must plead that (1) they were a member of a protected class; (2) they attempted to engage in a "real estate-related transaction" with Hammonds, Kersten, and Century 21, and met all relevant qualifications for doing so; (3) Hammonds, Kersten, and Century 21 refused to transact business with the plaintiffs despite their qualifications; and (4) the defendants continued to engage in that type of transaction with other parties with similar qualifications. *Secretary, United States Dept. of Hous. & Urban Develop. ex rel. Herron v. Blackwell,* 908 F.2d 864, 870 (11th Cir.1990).

The plaintiffs have failed to establish a prima facie case against the defendants under § 3605. The plaintiffs have not alleged that the defendants were involved in a business that engaged in a "residential real estate-related transaction" as defined by the statute. Moreover, there is no allegation that Hammonds, Kersten, or Century 21 discriminated against the plaintiffs in "making available such a transaction." Instead, the plaintiffs merely assert that "the language of the section is broad" and that "[t]here is no indication in the language, or case precedent, that the section is not applicable" to this situation. We find, however, that Congress has clearly delimited the scope of § 3605, and that the plaintiffs' claim, as argued before this court, does not raise a genuine issue of material fact. Accordingly, the district court was correct in granting summary judgment to the defendants on this claim.

V

■ The plaintiffs argue that all of the defendants violated 42 U.S.C. § 3617 by interfering with the exercise and enjoyment of the plaintiffs' right to fair housing.[4] Section 3617 of the FHAA provides as follows:

---

4. As the district court pointed out, there is some disagreement as to the requirement of a nexus between a § 3617 claim and a § 3604 claim. The Seventh Circuit, for example, has held that where "the conduct that allegedly violated section 3617 is the same conduct that allegedly violated section 3604(a) and was engaged in by the same party, the validity of the section 3617 claim depends upon whether the [conduct] violated section 3604(a)." *Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights,* 558 F.2d 1283, 1288 n. 5 (7th Cir.1977), *cert. denied,* 434

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [the Fair Housing Act].

As the plaintiffs point out, the language "interfere with" has been broadly applied "to reach all practices which have the effect of interfering with the exercise of rights" under the federal fair housing laws. *United States v. American Inst. of Real Estate Appraisers*, 442 F.Supp. 1072, 1079 (N.D.Ill.1977), *appeal dismissed*, 590 F.2d 242 (7th Cir.1978); *see also Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972) ("[t]he language of the Act is broad and inclusive"). We agree with the plaintiffs that Congress intended the FHAA to be read with its remedial purpose in mind. Still, a court "cannot discover how far a statute goes by observing the direction in which it points." *National Ass'n for the Advancement of Colored People v. American Family Mut. Ins. Co.*, 978 F.2d 287, 298 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2335, 124 L.Ed.2d 247 (1993).

The plaintiffs would have us hold that any action whatsoever that in any way hinders a member of a protected class under the fair housing law in obtaining housing is a *per se* violation of § 3617, so long as there is some evidence of discriminatory effect or intent on the actor's part. On the other hand, the district court found that, in order to state a claim under § 3617, an allegation that a defendant "interfered with" a plaintiff's rights must include an allegation that the action had "some component of potent force or duress." 799 F.Supp. at 726 (footnote omitted).

We believe, however, that the scope of § 3617 should at least be analogous to the scope of § 3604(f). Section 3617 is not limited to those who used some sort of "potent force or duress," but extends to other actors who are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus. Under this standard, the language "interfere with" encompasses such overt acts as racially-motivated firebombings, *Stirgus v. Benoit*, 720 F.Supp. 119 (N.D.Ill. 1989), sending threatening notes, *Sofarelli v. Pinellas County*, 931 F.2d 718 (11th Cir. 1991), and less obvious, but equally illegal, practices such as exclusionary zoning, *United States v. City of Birmingham*, 727 F.2d 560 (6th Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984), deflating appraisals because of discriminatory animus, *United States v. American Inst. of Real Estate Appraisers, supra*, and insurance redlining, *Laufman v. Oakley Bldg. & Loan Co.*, 408 F.Supp. 489 (S.D.Ohio 1976).

■ We find that the actions of the defendants in this case do not rise to the level of "interference with" the rights of the plaintiffs. First, Kersten and Century 21 are not liable under § 3617 of the FHAA. The plaintiffs have failed to allege any act on Kersten's part that would constitute "interference" with either the plaintiffs' exercise of their right to fair housing or Hammonds's attempt to lease the 24 Mile Road property to MORC. The evidence indicates that Kersten and Century 21 had no direct involvement in the transaction, and there is no indication of discriminatory animus.[5]

Second, Hammonds is not liable under § 3617 merely because she sold the house to the highest bidder. There is no evidence that the negotiations between Hammonds and MORC had given rise to a legally enforceable right in either party. In the ab-

U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978). Section 3604(a), which prohibits discrimination against members of several protected classes, is the model for § 3604(f)(1) and is directly analogous to the latter provision.

In the case at bar, the district court found that § 3604(f)(1) only addressed the denial of a protected right, whereas § 3617 protected the exercise or enjoyment of a protected right and that the validity of a § 3617 claim did not rest on the court's disposition of the § 3604 claim. None of

the parties, however, briefed or argued this issue on appeal. Consequently, for the purposes of this opinion, we will assume, without deciding, that the plaintiffs' § 3617 claim does not depend upon the validity of their § 3604(f) claim.

5. In fact, Century 21's attorney sent a letter to the neighbors, telling them to desist from their letter campaign because Century 21 said it violated the FHAA.

sence of such a right, we do not believe that Congress intended to compel a seller to agree to a less favorable offer simply because a member of a protected class made that offer. Furthermore, even if Hammonds's involvement in the transaction is direct enough to bring her actions within § 3617, the evidence indicates that Hammonds's motivation for selling the house to the Ivanovics was purely economic.

Third, we do not believe that the neighbors' act of purchasing the house constituted "interference" within the meaning of the FHAA. Although the neighbor's actions did "interfere" with MORC's negotiations for the 24 Mile Road property, this interference is not direct enough to warrant a finding of liability in this case: the neighbors' actions did not prevent MORC from meeting Hammonds's timetable, or even from continuing to bid for the property. Although there is evidence of a discriminatory animus on the neighbors' part, we do not find that they were in a position directly to disrupt, other than by economic competition, the plaintiffs' enjoyments of their rights, especially given MORC's own dilatoriness in the transaction.

We conclude that the district court was correct in granting summary judgment to the defendants on the plaintiffs' § 3617 claims.

## VI

Finally, the district court held that the FHAA was unconstitutional as applied to the facts in this case. Since we hold that none of the defendants' acts violate the FHAA, we do not reach the question of the act's constitutionality. Furthermore, we agree with the district court that the plaintiffs' claims under 42 U.S.C. § 1985 and § 1986 must necessarily fail since these actions are dependent upon a finding that the defendants violated the FHAA. Similarly, we find no abuse of discretion in the district court's decision to dismiss without prejudice the plaintiffs' pendent state claims. *See* 28 U.S.C. § 1367(c)(4). Accordingly, we AFFIRM the district court's entry of summary judgment in the defendants' favor.