UNITED STATES of America, Plaintiff,

Edward and Nancy Pine, Plaintiff–
Intervenors,

v.

W.J. and Ann WAGNER, Mrs. Edward D.W. Hardin, Thomas E. and Doris H. Brents, Ray Troutman, and Vito and Sonia Ciraci, Defendants.

Civil No. 3:94–CV–2540–H.

United States District Court,
N.D. Texas,
Dallas Division.

March 12, 1996.

Katherine Savers McGovern, Attorney at Law, U.S. Attorney's Office, Department of Justice, Dallas, TX, Brian F. Heffernan, Timothy J. Moran, U.S. Department of Justice, Civil Rights Division, Washington, DC, Lars T. Waldorf, Attorney at Law, U.S. Department of Justice, Housing and Civil Enforcement Section, Civil Rights Division, Washington, DC, Gavin C. Dowell, U.S. Department of Justice, Civil Rights Division, Housing and Civil Enforcement Section, Washington, DC, for plaintiff U.S.

David Ferleger, Philadelphia, PA, for intervenor-plaintiffs Edward Pine, Nancy Pine and movant LELSZ/LELSZ Class.

Donald Nicholas Acuff, Attorney at Law, Law Office of D. Nicholas Acuff, Fort Worth, TX, for defendants W.J. Wagner, Ann Wagner, Ray Troutman.

Rick K. Disney, Attorney at Law, Douglas Kressler & Wuester, Fort Worth, TX, for defendant Edward D.W. Hardin.

Jeffrey Jack Wolf, Attorney at Law, Amy Eileen Scallan, Attorney at Law, Jackson & Walker, Fort Worth, TX, for defendants Tom Griffin, Olga Griffin, Thomas E. Brents, Doris H. Brents.

Benjamin Allen Douglas, Attorney at Law, Rick K. Disney, Attorney at Law, Douglas Kressler & Wuester, Fort Worth, TX, for defendants Vito Ciraci, Sonia Ciraci.

Garth Anthony Corbett, Attorney at Law, Advocacy Inc., Austin, TX, for movant Advocacy Inc.

Donald Curtis Templin, Attorney at Law, Arnold Augur Spencer, Attorney at Law, Haynes & Boone, Dallas, TX, Lawrence Andrew Gaydos, Attorney at Law, Haynes & Boone, Fort Worth, TX for movant Julie M. Ratliff.

## MEMORANDUM OPINION AND ORDER

SANDERS, Senior District Judge.

This case was tried before the Court, without a jury, on February 5 through 7, 1996, on the issue of liability only. Pursuant to the Court's Order of January 25, 1996, the case was bifurcated, with the damages issue to be tried, if necessary, at a later date.

## I. BACKGROUND

Plaintiff United States ("the Government") filed a Fair Housing Act lawsuit against certain homeowners in the Ridgmar subdivision of Fort Worth, Texas. The Government alleges that Defendants violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq., by filing a state lawsuit on July 1, 1991, to prevent the Pines from selling their home to Tarrant County Mental Health and Mental Retardation ("TCMHMR") for use as a group home for six mentally retarded children. Plaintiff–Intervenors Edward and Nancy Pine ("the Pines") joined in the Government's claims.

## II. FINDINGS OF FACT

1. Any finding of fact containing a conclusion of law is also a conclusion of law. Any conclusion of law containing a finding of fact is also a finding of fact.

### THE NEIGHBORHOOD

2. In the summer of 1991, the Pines resided at 6341 Juneau Road in Ridgmar, a subdivision in Fort Worth. Stipulated Fact 2. Defendants W.J. and Ann Wagner (6313 Juneau), Mrs. Edward D.W. Hardin ("Beverly Hardin") (6309 Juneau), and Vito and Sonia Ciraci (6308 Juneau) lived on the same block of Juneau Road as the Pines. Stipulated Fact 3; Plaintiffs' Exhibit ("Ex.") 1; Transcript ("Tr.") at 64, 92. Defendants Thomas and Doris Brents (6341 Inca) lived on the block one street over from the Pines. Tr. at 293; Plaintiffs' Ex. 12. Defendant Ray Troutman (6337 Klamath) lived around the corner from the Pines. Plaintiffs' Ex. 1.

### THE PINE/TCMHMR SALE

3. On June 10, 1991, TCMHMR and the Pines signed a contract for sale of the Pines' home in Ridgmar to TCMHMR for the purchase price of $215,650.00. Plaintiffs' Ex. 255; Tr. at 147; Stipulated Fact 7.

4. Under the terms of the contract, the sale was contingent on (1) a property appraisal showing an appraised value not less than the sales price and (2) final approval by TCMHMR's Board of Directors. Plaintiffs' Ex. 255; Stipulated Fact 8.

5. The sales contract required closing to occur on or before July 25, 1991. Plaintiffs' Ex. 255.

6. The June 11, 1991, appraisal showed a value of $220,000.00. Plaintiffs' Ex. 248; Tr. at 148; Stipulated Fact 10.

7. The TCMHMR Board approved the purchase of the Pines' home for $215,650.00 at its June 25, 1991, Board meeting. Plaintiffs' Ex. 62; Stipulated Fact 14.

8. Texas law required approval from the Texas Department of Mental Health and Mental Retardation ("TXMHMR") before the purchase could be closed. Stipulated Facts 12, 13.

9. On July 11, 1991, TXMHMR deferred decision on TCMHMR's request for approval of the purchase of the Pines' home. Plaintiffs' Ex. 68. TCMHMR said that "information received by the Department regarding the property at 6341 Juneau indicates discrepancies in the appraised value" and requested a second appraisal. Plaintiffs' Ex. 68. The second appraisal was requested by TXMHMR "as a result of Mr. Ratliff's letters to TCMHMR and TXMHMR." Stipulated Fact 26.

10. TXMHMR approved the purchase on July 29, 1991. Plaintiffs' Ex. 75.

11. On July 31, 1991, the TCMHMR Board approved the sale at a reduced price of $210,-000. Plaintiffs' Ex. 76; Stipulated Fact 29.

12. The sale closed on or about August 2, 1991. Stipulated Fact 30.

13. No closing had been set between July 1, 1991, and July 9, 1991. Tr. at 167(7).

## THE PETITIONS [1]

14. On or before June 30, 1991, each of the named Defendants signed a petition opposing the "PROPOSED ESTABLISHMENT OF A HOUSE FOR MENTALLY RETARDED (A HALFWAY HOUSE)." Plaintiffs' Ex. 17 [2] (Brents); 23 (Ciracis); 236 (Wagners, Hardin); 347 (Troutman) (Exhibits 236 and 347 are more legible copies of pages of Plaintiffs' Ex. 17) Thomas Brents signed for his wife. Tr. at 293–96, 358.

15. Thomas Brents hand-delivered petitions signed by all Defendants, except the Ciracis, to Tarrant County Commissioner J.D. Johnson on the morning of July 1, 1991. Plaintiffs' Ex. 17.

---

**1.** See attachments.

**2.** Plaintiffs' Ex. 17 is Tom Brents' letter of July 1, 1991, to Commissioner Johnson enclosing the petitions signed on Sunday, June 30, 1991.

16. Although the petition opposing the "HOUSE FOR MENTALLY RETARDED (A HALFWAY HOUSE)" signed by the Ciracis was not delivered to J.D. Johnson on July 1, 1991, Sonia Ciraci testified that she signed that petition before July 1, 1991. Tr. at 69, 75; Plaintiffs' Ex. 23. Vito Ciraci signed the petition before the filing of the lawsuit on July 1, 1991. Tr. at 391, 69, 75.

## KNOWLEDGE OF INTENDED USE AS GROUP HOME

17. Defendants W.J. Wagner, Ann Wagner, Vito Ciraci, Sonia Ciraci, Beverly Hardin, and Ray Troutman all testified at trial that they filed the lawsuit because they believed the Pines' home would be used for "paroled convicts" and "drug addicts." [3] That testimony is not credible. All those Defendants, except for Beverly Hardin, were impeached by prior deposition testimony where they admitted that they had known the Pines' home would be used for persons with retardation before filing the lawsuit. W.J. Wagner Testimony, Tr. at 181; Ann Wagner Testimony, Tr. at 247–48; Vito Ciraci Testimony, Tr. at 390–91; Sonia Ciraci Testimony, Tr. at 71; Troutman Testimony, Tr. at 379. Those Defendants' testimony is further contradicted by fellow Defendant Thomas Brents, who admitted that he knew the group home would be used for persons with retardation before the lawsuit, and by Defendants' own witness, Dr. John Orth, a neighbor who testified that he knew "from the outset" that the group home would be for persons with retardation. Thomas Brents Testimony, Tr. at 297; Orth Testimony, Tr. at 611. Those Defendants' testimony is further contradicted by the evidence that they and their attorneys learned from multiple sources that the Pines' home would be used for children with retardation.

### W.J. Wagner

18. W.J. Wagner learned about the sale of the Pines' home to TCMHMR on June 26, 1991. Tr. at 198; Plaintiffs' Ex. 36.

---

**3.** W.J. Wagner, Thomas Brents, and Doris Brents also ostensibly opposed the home out of fear that it would lower their property values. Plaintiffs' Ex. 127; Tr. at 306, 347. Some Defendants, including Thomas Brents, claim to have opposed the home because it was overpriced. Plaintiffs' Ex. 4, 17; Tr. at 382.

19. W.J. Wagner signed the petition contained at Plaintiffs' Ex. 17 and Plaintiffs' Ex. 236 on or before June 30, 1991. Tr. at 294. He agreed with the petition. Tr. at 180.

20. W.J. Wagner knew when he signed the petition, prior to July 1, 1991, that TCMHMR would use the home for people with retardation. Tr. at 181, 238.

21. W.J. Wagner told Beverly Hardin of the impending sale of the Pines' home June 26, 1991. Tr. at 93, 107.

22. W.J. Wagner distributed the "Emergency" leaflet. Tr. at 178.

23. Prior to July 1, 1991, the Pines' realtor, Grey McGown, said to Tom Law:[4] "Now, when I talked to W.J. Wagner, he said to me, 'How would you like to have these people next door to you?'" Plaintiffs' Ex. 233 at 6; Tr. at 447.

### Ann Wagner

24. Ann Wagner signed the petition before June 30, 1991. Plaintiffs' Ex. 17, 236. At the time she signed it, Ann Wagner knew that the home would be used to house children with retardation. Tr. at 247–48.

25. Ann Wagner admitted she opposed the use of the Pines' home as a group home for children with mental retardation. Tr. at 246.

26. Ann Wagner accompanied her husband, Beverly Hardin, and Sonia Ciraci as they drove around the neighborhood passing out the "Emergency" leaflet. Tr. at 250.

### Beverly Hardin

27. Beverly Hardin acknowledges that the petition was against a home for "mentally retarded" and does not mention drug addicts or convicts. Tr. at 96–97. She signed the petition contained at Plaintiffs' Ex. 17 and Plaintiffs' Ex. 236 on or before July 1, 1991. Tr. at 294–95.

28. Beverly Hardin authorized her name to be included as a party in the state lawsuit, and knew that her name was included in the lawsuit. Plaintiffs' Ex. 55. She offered to participate in the suit before it was filed. Tr. at 98.

29. Beverly Hardin learned that the Pines' home was being sold to TCMHMR on or about June 26, 1991. Tr. at 93.

30. Beverly Hardin rode in the car with W.J. Wagner and Ann Wagner while the first "Emergency" leaflet (Plaintiffs' Ex. 3) was distributed. Tr. at 94–95.

### Sonia Ciraci

31. Sonia Ciraci signed the petition at Plaintiffs' Ex. 23.

32. Sonia Ciraci did not object to participating in the lawsuit. Tr. at 85, 88.

33. Sonia Ciraci delivered the "Emergency" leaflet to Sophia Payne, a neighbor at 6321 Juneau. Tr. at 50; Plaintiffs' Ex. 3.

34. The "Emergency" leaflet called the sale of the home a "disaster" for "social reasons." Plaintiffs' Ex. 3.

35. Sonia Ciraci solicited signatures on a "Petition Against Halfway House at 6341 Juneau Road." Plaintiffs' Ex. 235.

36. About the last weekend in June (Plaintiffs' Ex. 104 dates it at Friday, June 28, 1991), Sonia Ciraci came uninvited to the home of Sophia Payne, a neighbor at 6321 Juneau. Tr. at 49. Sonia Ciraci was "quite angry," and specifically spoke about her objections to people with retardation coming to live in a group home on her block. Tr. at 49. Although Sonia Ciraci initially claimed that her concern was about "convicts or drug addicts," she was equally adamant against people with retardation. Tr. at 49, 52. Sophia Payne was aware that the home would be for people with retardation. Tr. at 55. This made no difference to Sonia Ciraci, who grew angrier during the conversation. Tr. at 49, 52.

37. In June 1991, Sonia Ciraci learned from W.J. Wagner that the Pines were selling their home to TCMHMR. Plaintiffs' Ex. 348; Tr. at 79–80. Sonia Ciraci also called Julie Ratliff, a neighbor and the wife of

---

4. W.J. Wagner retained attorney Tom Law to coordinate the lawsuit with Haynes & Boone and to research the legal issues involved in the lawsuit. Tr. at 189; Plaintiffs' Ex. 232.

attorney William Ratliff[5], in June. Tr. at 66–67; Plaintiffs' Ex. 348. Sonia Ciraci had also learned of the sale from Beverly Hardin. Tr. at 49–50. Julie Ratliff called Nancy Pine on June 28, 1991. Tr. at 51, 551; Plaintiffs' Ex. 104.

### Vito Ciraci

38. Vito Ciraci signed the petition opposing a home "for mentally retarded" in Ridgmar before the filing of the lawsuit on July 1, 1991. Tr. at 391, 69, 75.

39. Vito Ciraci knew in late June that the home would be for people with retardation. Tr. at 390.

### Thomas Brents

40. On June 29, 1991, Thomas Brents received a call from a TCMHMR representative who informed him that TCMHMR was going to purchase the Pines' home to use as a group home for children with retardation. Tr. at 297–98. Thomas Brents then informed his neighbors, including W.J. Wagner and William Ratliff, about that telephone call and the information he received that the home would be used for children with retardation. Tr. at 298–301, 303.

41. On June 30, 1991, Thomas Brents signed a petition opposing the home for "mentally retarded." Plaintiffs' Ex. 17, 236; Tr. at 296–97. He signed on his own behalf and also signed his wife's name. Plaintiffs' Ex. 17, 236. At the time he signed the petition, Thomas Brents knew that the home would be used for children with retardation. Tr. at 297–98, 308.

42. Thomas Brents believes now, and believed in 1991, that a "group home" is an "inefficient method of dealing with retarded children's housing." Plaintiffs' Ex. 17.

43. Thomas Brents opposed the group home when he learned of the purchase price on June 30, 1991, because he believed it would be a waste of taxpayer money. Tr. at 327–28.

44. On July 1, 1991, Thomas Brents presented the signed petitions to County Commissioner J.D. Johnson. Plaintiffs' Ex. 17.

45. Thomas and Doris Brents claim to have first learned that they had been named as plaintiffs in the 1991 state lawsuit sometime after the Temporary Restraining Order ("TRO") had been dissolved, when they received pleadings in the mail from Haynes & Boone. When the Brents received notice that Haynes & Boone was proceeding with a lawsuit against TCMHMR in October 1991, Plaintiffs' Ex. 9, Thomas Brents sent a letter to Haynes & Boone on October 18, 1991, indicating that the Brents wanted "no part" of any legal action. Defendants' Ex. 35.

46. Thomas and Doris Brents, "under penalty of perjury," admitted to HUD on October 9, 1991, that "we were parties to a temporary restraining order on the Pine residence" and that "[a]s indicated in the restraining order we did not wish the single family nature of our neighborhood to be changed." Plaintiffs' Ex. 19; Tr. at 353.

47. Thomas and Doris Brents took no action to find out how they had been named. Tr. at 350–51. They took no action to remove themselves until after notice of the filing of the HUD complaint against them. Tr. at 351, 353. In fact, the Brents' first claim of non-authorization arose after HUD issued its charge against them in October 1994, for violation of the FHA. Tr. at 318; *see* Stipulated Fact 33.

### Doris Brents

48. Doris Brents did not sign the petition. On June 30, 1991, Thomas Brents signed a petition opposing the home for "mentally retarded" on his own behalf and signed his wife's name. Plaintiffs' Ex. 17, 236.

49. Thomas and Doris Brents claim to have first learned that they had been named as plaintiffs in the 1991 state lawsuit sometime after the TRO had been dissolved, when they received pleadings in the mail from Haynes & Boone. When the Brents received notice that Haynes & Boone was proceeding with a lawsuit against TCMHMR in October 1991,

---

**5.** William Ratliff, the Haynes & Boone partner who filed the state lawsuit on July 1, 1991, lives next door to 6341 Juneau Road. Stipulated Fact 4.

Plaintiffs' Ex. 9, Thomas Brents sent a letter to Haynes & Boone on October 18, 1991, indicating that the Brents wanted "no part" of any legal action. Defendants' Ex. 35.

50. Thomas and Doris Brents, "under penalty of perjury," admitted to HUD on October 9, 1991, that "we were parties to a temporary restraining order on the Pine residence" and that "[a]s indicated in the restraining order we did not wish the single family nature of our neighborhood to be changed." Plaintiffs' Ex. 19; Tr. at 353.

51. Thomas and Doris Brents took no action to find out how they had been named. Tr. at 350–51. They took no action to remove themselves until after notice of the filing of the HUD complaint against them. Tr. at 351, 353. In fact, the Brents' first claim of non-authorization arose after HUD issued its charge against them in October 1994, for violation of the FHA. Tr. at 318; *see* Stipulated Fact 33.

### Ray Troutman

52. Ray Troutman signed a petition in June 1991 protesting a "house for mentally retarded" on Juneau. Plaintiffs' Ex. 347; Tr. at 294, 296.

53. Ray Troutman knew when he signed the petition in June that the home would be used for people with retardation. Tr. at 378–79.

54. On July 1, Ray Troutman protested the group home to County Commissioner Johnson. Plaintiffs' Ex. 18.

55. On November 27, 1991, Ray Troutman specifically informed HUD and his attorneys that he did "authorize [his] name to be included as a party to the Application for Temporary Restraining Order." Plaintiffs' Ex. 135.

### Lost Creek Neighbors Told Ridgmar Neighbors

56. Prior to the lawsuit's filing, the Lost Creek group [6] had told Ridgmar neighbors that TCMHMR planned to move children with retardation from Fort Worth State School to Ridgmar, to the Juneau Road home. Tr. at 264–68, 278–79.

### Defendants' Attorneys Knew

57. On June 30, 1991, W.J. Wagner retained William Ratliff and his law firm, Haynes & Boone, to represent a number of Ridgmar residents in a state lawsuit to block the sale of the Pines' home to TCMHMR. Stipulated Fact 15.

58. William Ratliff was informed by TCMHMR official Brad Irvin on June 29 or June 30, 1991, that federal law (the FHA) and Texas state law prohibited discrimination against people with handicaps in housing, and that TCMHMR had a right to place the home on Juneau in Ridgmar. Tr. 156–57.

59. William Ratliff was informed on June 29 or June 30, 1991, that TCMHMR was closing Crossroads [7] and planning to use the Pines' home for six children with retardation. Tr. at 156–57; Plaintiffs' Ex. 110.

60. On June 29, 1991, W.J. Wagner called Tom Law to find out whether Ridgmar's deed restrictions could be used to keep out the group home. Tr. at 184–85, 227; Plaintiffs' Ex. 84. W.J. Wagner retained Tom Law to coordinate the lawsuit with Haynes & Boone and to research the legal issues involved in the lawsuit. Tr. at 189; Plaintiffs' Ex. 232.

61. Tom Law discussed the sale of the Pines' home with W.J. Wagner and Beverly Hardin on June 29, 1991. Plaintiffs' Ex. 84; Tr. at 463.

62. Tom Law or his associates also discussed the situation with William Ratliff;

---

**6.** The TCMHMR Board approved the purchase of a lot in Lost Creek Estates on June 25, 1991—the same day it approved the purchase of the Pine's home. Plaintiffs' Ex. 62, 63, 261. In late June 1991, the Lost Creek Estates Neighborhood Association began efforts opposing TCMHMR's purchase of a lot for construction of a group home for persons with retardation in that neighborhood. Plaintiffs' Ex. 237.

**7.** In early 1991, TCMHMR decided to move eighteen children with retardation from Crossroads Development Center, an institutional facility in Haltom City, into community homes after determining that Crossroads was an unsuitable environment. Tr. at 134–36; Stipulated Fact 5.

Brad Irvin, TCMHMR Program Manager; and Jerry Dunn, TCMHMR Board Chair, on June 29, 1991. Plaintiffs' Ex. 84; Tr. at 463–64.

### OTHER PRE–SUIT ACTIVITIES [8]

63. Defendants W.J. Wagner, Ann Wagner, Sonia Ciraci, and Beverly Hardin distributed the "Emergency" leaflet on Thursday, June 27, 1991. Plaintiffs' Ex. 104; Tr. at 93–94.

### THE STATE LAWSUIT

64. Defendants filed the state lawsuit with the intention of interfering with the sale of the Pines' home to TCMHMR for use as a group home, in violation of the FHA.

65. On July 1, 1991, the Defendants and others sued Edward Pine, TCMHMR, and the Rattikin Title Company seeking a TRO and "permanent injunctive relief" "prohibiting the sale/use of the subject property." Plaintiffs' Ex. 127.

66. On July 1, 1991, a TRO was granted. Plaintiffs' Ex. 216, Tr. at 188.

67. The stated basis for the state court lawsuit was to enforce a deed restriction. Plaintiffs' Ex. 127.

68. On July 8, 1991, the court dismissed the TRO. Stipulated Fact 23. Defendants dropped Edward Pine from the state court lawsuit on July 9, 1991, but maintained it with the same plaintiffs, and added new plaintiffs, against TCMHMR and Rattikin Title Company until November 9, 1992. Plain-

tiffs' Ex. 101; Plaintiffs' Ex. 102; Plaintiffs' Ex. 122; Plaintiffs' Ex. 129.

69. As a consequence of the lawsuit, the Pines were required to retain counsel and to pay attorneys' fees. Tr. at 556–57; Plaintiffs' Ex. 110, 130.

## III. CONCLUSIONS OF LAW

1. This trial concerned two issues: (1) whether the Government and the Pines demonstrated that Defendants violated section 3617 of the FHA by filing the 1991 lawsuit and (2) whether the Government and the Pines met their burden of proving Defendants' actions are outside of the protection of the First Amendment. The Court ruled earlier that Defendants' First Amendment protection is lost if the 1991 lawsuit was filed (1) for an illegal objective; (2) without a reasonable basis in law or fact; and (3) with an improper motive. See Order dated January 29, 1996.

2. In addition, Thomas Brents, Doris Brents, and Ray Troutman are the only Defendants who argue they are not liable because they did not authorize the use of their names in the 1991 state court lawsuit.

### Issue 1—Violation of the FHA

3. The Court finds that the evidence establishes intentional interference by the Defendants; the lawsuit was filed with the intent to interfere, based on the handicap of the home's residents. Defendants are therefore liable under section 3617.[9]

---

**8.** The Government and Plaintiff–Intervenors offer a mass of evidence regarding the activities of Defendants after July 1, 1991, the day the state lawsuit was filed. Although the Court recognizes that such evidence may strengthen inferences that can be drawn concerning the discriminatory animus of Defendants, the Court has already ruled (1) that petitioning and leafleting activities are constitutionally protected and (2) that the legal test to be applied in the case makes relevant only those acts of Defendants prior to filing the state lawsuit on July 1, 1991, because only those acts can demonstrate (1) improper motive; (2) illegal objective; and (3) no reasonable basis in law or fact at the time the lawsuit was filed.

**9.** The Court notes that Defendants contend that unless it is shown that the 1991 lawsuit delayed the sale, the lawsuit did not interfere and the Defendants did not violate § 3617 by filing the

suit. The Court does not agree with Defendants that there needs to be a consequence of the interference, i.e. a delay. Rather, it is the nature of Defendants' conduct, rather than the harm caused by the conduct, that determines whether a practice violates § 3617. See United States v. City of Hayward, 36 F.3d 832, 835–37 (9th Cir. 1994), cert. denied, —— U.S. ——, 116 S.Ct. 65, 133 L.Ed.2d 27 (1995) (holding that city's conduct violated the FHA even though its attempt to affect the aggrieved person's conduct was ultimately unsuccessful; "[s]ection 3617 does not require one . . . who is interfered with to capitulate to the interference.").

Nonetheless, assuming arguendo that such a consequence were required, the evidence warrants the conclusion that there was such a delay caused by Defendants. The closing did not occur by July 25, 1996, as contemplated by the original contract of sale. Plaintiffs' Ex. 98. On July 11,

4.  Section 3617 of the FHA makes it unlawful to:

> "coerce, intimidate, threaten, or interfere with any person ... on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section ... 3604 of this title."

42 U.S.C. § 3617.[10]

5.  Section 3617 "has been broadly applied to reach *all practices* which have the effect of interfering with the exercise of rights under the federal fair housing laws." *United States v. City of Hayward*, 36 F.3d 832, 835 (9th Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 65, 133 L.Ed.2d 27 (1995) (citations and quotations omitted) (emphasis added).

6.  When Congress amended the FHA in 1988 to prohibit *inter alia* discrimination against persons with disabilities, it made clear that the FHA "is intended to prohibit special restrictive covenants ... which have the effect of excluding ... congregate living arrangements for persons with handicaps." H.R.Rep. No. 711, 100th Cong., 2d Sess. 23 (1988), U.S.Code Cong. & Admin.News 1988, pp. 2173, 2184. Congress also stated that the FHA "prohibit[s] the application of special requirements through ... restrictive covenants ... that have the effect of limiting the ability of [disabled persons] to live in the residence of their choice in the community." H.R.Rep. No. 711, 100th Cong., 2d Sess. 24 (1988), U.S.Code Cong. & Admin.News 1988, pp. 2173, 2185.

7.  Since the FHA Amendments took effect, courts have made clear that single family deed restrictions cannot be used to exclude group homes for disabled persons from single family neighborhoods. *See Martin v. Constance*, 843 F.Supp. 1321, 1326 (E.D.Mo. 1994); *United States v. Scott*, 788 F.Supp. 1555, 1562 (D.Kan.1992); *Casa Marie, Inc. v. Superior Court*, 752 F.Supp. 1152, 1168 (D.P.R.1990), *vacated on other grounds*, 988 F.2d 252 (1st Cir.1993); *Hill v. Community of Damien of Molokai*, 121 N.M. 353, 911 P.2d 861 (1996);[11] *Deep East Texas Regional Mental Health and Mental Retardation Servs. v. Kinnear*, 877 S.W.2d 550, 557 (Tex. App.—Beaumont 1994, no writ); *Broadmoor San Clemente Homeowners Ass'n v. Nelson*, 25 Cal.App.4th 1, 30 Cal.Rptr.2d 316 (1994); *Rhodes v. Palmetto Pathway Homes, Inc.*, 303 S.C. 308, 400 S.E.2d 484 (1991).

8.  The children with retardation who now live at 6341 Juneau Road are "handicapped" within the meaning of the FHA. Stipulated Fact 6.

9.  The Pines are "aggrieved persons" as defined in section 802(i) of the FHA. 42 U.S.C. § 3602(i).

10.  The Pines' former residence at 6341 Juneau Road in Fort Worth is a "dwelling" within the meaning of section 802(b) of the FHA. 42 U.S.C. § 3602(b); Stipulated Fact 1.

11.  The Court notes that Defendants argue that section 3617 is not a strict liability statute. According to Defendants, the statute

---

1991, TXMHMR deferred a decision on TCMHMR's request for approval of the purchase of the Pines' home. Plaintiffs' Ex. 68. TXMHMR said that "[i]nformation received by the Department regarding the property at 6341 Juneau indicates discrepancies in the appraised value" and requested a second appraisal. Evidence suggests that acts of Defendants caused the second appraisal, and thereby caused the delay and the reduction in purchase price.

**10.** HUD's implementing regulations define the scope of this prohibition to include:

> Coercing a person, either orally, in writing, or by other means, to deny or limit the benefits provided that person in connection with the sale or rental of a dwelling or in connection with a residential real estate-related transaction because of race, color, religion, sex, handicap, familial status, or national origin.

24 C.F.R. § 100.400(c)(1).

**11.** In this recent, factually similar case, the plaintiff/neighbors relied on a restrictive covenant to enjoin the use of property in their subdivision as a group home for people with AIDS. The neighbors were concerned about increased traffic in the neighborhood. Although the trial court held that the restrictive covenant prevented the use of the group home and issued a permanent injunction, the New Mexico Supreme Court reversed. The New Mexico Supreme Court agrees with the federal district court for Kansas that "[g]iven its breadth, the [FHA] would reasonably encompass the act of enforcing a neutral restrictive covenant through the judicial system for the purpose of denying equal housing opportunities to disabled individuals." *Hill*, 911 P.2d at 872, *citing Scott*, 788 F.Supp. at 1562.

requires proof of an intent to "coerce," "intimidate," "threaten," or "interfere" on the part of each Defendant. *See U.S. v. Gilbert,* 813 F.2d 1523, 1529 (9th Cir.1987), *cert. denied,* 493 U.S. 1082, 110 S.Ct. 1140, 107 L.Ed.2d 1044 (1990).

■ 12. Evidence that Defendants brought the lawsuit because of the handicaps of the prospective residents is sufficient to prove liability, regardless of whether Defendants' opposition to the children with retardation was based on hostility, benign concern, economic considerations, or ignorance. *See United Auto. Workers v. Johnson Controls, Inc.,* 499 U.S. 187, 199, 111 S.Ct. 1196, 1203–04, 113 L.Ed.2d 158 (1991); *United States v. Pelzer Realty Co.,* 484 F.2d 438, 443 (5th Cir.1973), *cert. denied,* 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 286 (1974); *Diaz v. Pan Am. World Airways, Inc.,* 442 F.2d 385, 389 (5th Cir.), *cert. denied,* 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971); *United States v. Scott,* 809 F.Supp. 1404, 1407 (D.Kan.1992); *United States v. City of Birmingham,* 538 F.Supp. 819, 830 (E.D.Mich.1982), *aff'd as modified,* 727 F.2d 560 (6th Cir.), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). Although there is ample evidence that many of the Defendants displayed blatant discriminatory animus against the retarded, it is not necessary for the United States and Plaintiff–Intervenors to show that the Defendants bore malice or ill-will against the disabled.[12] "Whether motivated by animus, paternalism, or economic considerations, intentional handicap discrimination is prohibited by the Act." *Scott,* 788 F.Supp. at 1562. Some courts have found that concerns that a proposed group home would decrease property values constitute evidence of discriminatory intent. *Scott,* 788 F.Supp. at 1560; *Casa Marie, Inc.,* 752 F.Supp. at 1168; *City of Birmingham,* 538 F.Supp. at 830.

## Issue 2—First Amendment Protection

■ 13. For the reasons discussed below, the Court concludes that Defendants' act of filing the 1991 state lawsuit is not protected by the First Amendment, because the lawsuit was filed (1) for an illegal objective; (2) without a reasonable basis in law or fact; and (3) with an improper motive.

### Illegal Objective

14. Where the issue is whether the Defendants did something that caused them to lose their First Amendment rights, the focus must be on the objective, not the potential effect, of the 1991 suit. Defendants contend that the objective of the state court suit was to prevent any use other than that permitted by the deed restriction. According to Defendants, the objective of the lawsuit was simply to enforce a facially valid deed restriction.

15. The Court concludes, based on the evidence presented at trial, that Defendants' 1991 state lawsuit sought an illegal objective. Evidence of Defendants' activities prior to the filing of the suit on July 1, 1991[13], suggests that the illegal purpose of the 1991 lawsuit was to prevent the sale of the Pines' home to TCMHMR for use as a group home

12. The Court notes that the Government and the Pines have probably demonstrated intentional discrimination against the handicapped, in violation of § 3604, by at least some Defendants. Section 3604 makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of ... a person residing in or intending to reside in that dwelling after it is sold, rented, or made available." § 3604(f)(1).

The evidence suggests, for example, that (1) Sonia Ciraci was "hysterical" about the sale to TCMHMR, Tr. at 550; (2) Thomas Brents believes that a group home is an "inefficient method of dealing with retarded children's housing," Plaintiffs' Ex. 17; (3) W.J. Wagner stated "The whole idea of what they're doing is wrong. They get good care in the institutions. They're happy.

Why should they live here? These people wouldn't know if they're in Ridgmar or Como." Tr. at 200, and "How would you like to have these people next door to you?" Plaintiffs' Ex. 223; and (4) the "Emergency" leaflet distributed by W.J. Wagner, Ann Wagner, Beverly Hardin and Sonia Ciraci describes the sale of the home a "disaster" for "social reasons." Plaintiffs' Ex. 3.

Nonetheless, because the intentional interference violation of § 3617 is so clear, the Court does not find it necessary to expand its holding to encompass intentional discrimination under § 3604.

13. Evidence of Defendants' activities after July 1, 1991, strengthens the conclusion that Defendants sought to prevent the sale of the Pines' home to TCMHMR for use as a group home for the mentally retarded.

for the mentally retarded, in violation of the FHA.

16.  Defendants' state lawsuit is not protected by the First Amendment because Defendants sought an illegal objective under federal law: the exclusion of a group home for mentally retarded children from their neighborhood because of the disabilities of the children in violation of the FHA, as amended. *See Scott,* 788 F.Supp. at 1562; *Martin v. Constance,* 843 F.Supp. 1321, 1325 (E.D.Mo. 1994); *Casa Marie, Inc.,* 752 F.Supp. at 1168; *Rhodes v. Palmetto Pathway Homes, Inc.,* 303 S.C. 308, 400 S.E.2d 484 (1991).

17.  Defendants' state lawsuit is not protected by the First Amendment because Defendants sought an illegal objective under state law: the exclusion of a group home for mentally retarded children from their neighborhood because of the disabilities of the children in violation of the Texas FHA and the Texas Property Code. Tex.Civ.Stat.Ann. art. 1f (West 1990); Tex.Prop.Code Ann. § 202.003 (West 1995) (eff. June 18, 1987) ("restrictive covenant may not be construed to prevent the use of property as a family home"); *Kinnear,* 877 S.W.2d at 557.

18.  The Court concludes that there is insufficient evidence that Vito Ciraci sought an illegal objective because there is insufficient evidence to connect Vito Ciraci to the filing of the 1991 state lawsuit.

*Reasonable Basis in Law or Fact*

19.  The Court concludes that Defendants' state lawsuit had no reasonable basis in law because there was ample authority that it violated the federal FHA when filed by Defendants on July 1, 1991. H.R.Rep. No. 711, 100th Cong., 2d Sess. 17 (1988), House Report at 23, U.S.Code Cong. & Admin.News 1988, pp. 2173, 2184; *Casa Marie, Inc.,* 752 F.Supp. at 1168; *Rhodes,* 400 S.E.2d 484.

20.  The Court further concludes that Defendants' lawsuit had no reasonable basis in law because it violated Texas Property Code section 202.003(b). Under section 202.003(b), which took effect on June 18, 1987, a "restric-

tive covenant may not be construed to prevent the use of property as a family home." Tex.Prop.Code Ann. § 202.003(b). Section 202.003(b) clearly applies to all restrictive covenants.[14]   Tex.Prop.Code Ann. § 202.002(a).

■   21.  Defendants first suggest that their attorneys were not aware of section 202.003 of the Property Code at the time that they filed the 1991 lawsuit. *But see infra* Conclusion 24. The evidence further suggests that a TCMHMR representative made Defendants and their attorneys aware, prior to filing their lawsuit, that the FHA and Texas law protected the rights of the children with retardation to live in a group home in Defendants' neighborhood. Moreover, attorneys, like the general citizenry, are charged with knowledge of the law. *See Pruet Prod. Co. v. Ayles,* 784 F.2d 1275, 1280 (5th Cir.1986) ("as an attorney, [the Defendant] is charged with knowledge of the law, even though he had no experience in [discrimination law]").

22.  Defendants also suggest that state law, as of July 1, 1991, was unsettled regarding whether the neighbors could rely on a deed restriction to prevent the use of property as a group home. Defendants point to one Texas appellate court case that preceded the 1988 FHA Amendments, *Shaver v. Hunter,* 626 S.W.2d 574 (Tex.App.—Amarillo 1981, writ ref'd n.r.e.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 377, 74 L.Ed.2d 510 (1982); and one unpublished Texas state district court case that was overturned on appeal in 1994, *Deep East Texas Regional Mental Health and Mental Retardation Services v. Kinnear,* 877 S.W.2d 550 (Tex.App.—Beaumont 1994, no writ).

23.  The Court recognizes that in *Shaver* the Texas appellate court questioned the constitutionality of any statute that created a preference for housing the mentally handicapped on equal protection grounds, and that such a constitutional argument could apply to Tex. Prop.Code section 202.003 or the FHA. The Court further recognizes that a constitutional attack on section 202.003 was successfully

---

**14.**  During the events at issue here, TCMHMR's proposed group home at 6341 Juneau Road met the definition of "family home" in Texas Proper-

ty Code section 202.003 and the "Community Homes for Disabled Persons Act," Tex.Rev.Civ. Stat.Ann. art. 1011n, sec. 3(a) (repealed).

made to a state district court in the *Kinnear* case, although that opinion was not recorded.

24. Despite the *Shaver* opinion and the state district court *Kinnear* holding, the Court remains convinced that Defendants' state lawsuit had no reasonable basis in law or fact. It appears that Defendants' lawyers completely ignored the federal FHA, federal case law regarding group homes, the Equal Protection Clause, and the landmark case *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Instead, Defendants' lawyers apparently relied on a summer intern's research memorandum limited to the constitutionality of Texas Property Code section 202.003. Plaintiffs' Ex. 231. And, Defendants' lawyers apparently overlooked the ancient principle of the primacy of federal law. The Supremacy Clause of the United States Constitution declares the primacy of federal law over state constitutional provisions as well as over state common and statutory law. *Utility Workers of America, Local No. 246 v. Southern California Edison Co.,* 852 F.2d 1083, 1087 (9th Cir.1988), *cert. denied,* 489 U.S. 1078, 109 S.Ct. 1530, 103 L.Ed.2d 835 (1989); *see* U.S. Const. art. VI, cl. 2. Where federal and state law conflict, the Supremacy Clause mandates the primacy of federal law. *Pratt v. Wilson,* 770 F.Supp. 539, 543 (E.D.Cal.1991). The weakness of Defendants' position is highlighted by what their attorney, Tom Law, told them in reliance on the intern's memorandum on Texas law. Even without reference to federal law, Tom Law concluded that "the bottom line is that we could not recommend litigation." Plaintiffs' Ex. 230 at 2.

### Improper Motive

25. The Government and the Pines met their burden of proof on the improper motive issue by demonstrating that Defendants had knowledge of the use of the Pine house *at the time the 1991 suit was filed* (July 1, 1991).

26. On or before June 30, 1991, each of the named Defendants, with the exception of Doris Brents, signed a petition opposing the "PROPOSED ESTABLISHMENT OF A HOUSE FOR MENTALLY RETARDED (A HALFWAY HOUSE)." Plaintiffs' Ex.

17; 23; 236; 347. Thomas Brents signed for his wife Doris Brents. Tr. at 293–96, 358.

27. W.J. Wagner, Ann Wagner, Vito Ciraci, Sonia Ciraci, and Ray Troutman all were impeached by prior deposition testimony where they admitted that they had known the Pines' home would be used for persons with retardation prior to the filing of the lawsuit. W.J. Wagner Testimony, Tr. at 181; Ann Wagner Testimony, Tr. at 247–48; Vito Ciraci Testimony, Tr. at 390–91; Sonia Ciraci Testimony, Tr. at 71; Troutman Testimony, Tr. at 379.

28. Thomas Brents had knowledge of the intended use of the home via a phone call from a TCMHMR representative on June 29, 1991. Tr. at 297–98.

29. William Ratliff and Tom Law, attorneys for Defendants, both had knowledge of the home's intended use prior to the filing of the 1991 state lawsuit. Plaintiffs' Ex. 110; Tr. at 156–57, 463–64; Plaintiffs' Ex. 84.

30. Ridgmar neighbor Dr. John Orth, a witness for Defendants, testified that he knew "from the outset" that the group home would be for persons with mental retardation. Tr. at 611.

31. Thus, the fact that each Defendant signed a petition opposing a house for the mentally retarded, coupled with the other evidence, warrants the conclusion that Defendants had knowledge of the home's intended use when they filed the 1991 state lawsuit.

### Issue 3—Unauthorized Use of Name in Suit

32. Thomas Brents, Doris Brents, and Ray Troutman are the only Defendants who argue they are not liable because they did not authorize the use of their names in the 1991 state court lawsuit.

33. The Court concludes that the Government has established that Thomas Brents and Ray Troutman authorized their participation in the 1991 state lawsuit.

34. The Court need not determine whether the Government has demonstrated that Doris' Brents authorized her participation in the 1991 lawsuit. The evidence of Doris Brents'

improper motive is insufficient to defeat her claim of First Amendment protection. Specifically, Doris Brents never signed a petition opposing the group home; thus, the Court need not infer that she was aware of the home's intended use at the time Defendants filed the 1991 state lawsuit.

## IV. CONCLUSION

1.   Defendants W.J. Wagner, Ann Wagner, Beverly Hardin, Sonia Ciraci, Ray Troutman, and Thomas Brents violated section 3617 of the FHA when they filed the 1991 state lawsuit.

2.   Defendants W.J. Wagner, Ann Wagner, Beverly Hardin, Sonia Ciraci, Ray Troutman, and Thomas Brents are not shielded by the First Amendment from liability for filing the 1991 state lawsuit.

3.   Defendants W.J. Wagner, Ann Wagner, Beverly Hardin, Sonia Ciraci, Ray Troutman, and Thomas Brents are liable for violating section 3617 of the FHA. Accordingly, the Court will determine damages/remedy at a separate trial.

SO ORDERED.

984

## APPENDIX

July 1, 1991
6341 Inca Rd.
Fort Worth, Tx 76116

Mr. J. D. Johnson
County Commissioner
Tarrant County

Dear Mr. Johnson:

Attached are the names of over 160 residents of Ridgmar
who oppose the County MHMR purchase of a home in our area.
These are only the people who signed the petition on Sunday.
I can assure you that there will be additional names added to
the list as more residents are contacted.

Many of these resident's knowledge of this purchase is incomplete
because MHMR chose not to share their plans plans with us. However,
all are in agreement that the MHMR purchase is an overpriced and
inefficient method of dealing with retarded children's housing.

Sincerely,

Tom Brents

EXHIBIT
Brents
8

PLAINTIFF'S
EXHIBIT
17

BRE 000035

## PETITION AGAINST HALFWAY HOUSE AT 6341 JUNEAU ROAD

WE, THE OWNERS OF PROPERTY IN THE RIDGMAR AREA OF FORT WORTH,
TEXAS, HEREBY PROTEST TO THE ZONING COMMISSION OF THE CITY OF FORT
WORTH AND THE TARRANT COUNTY MENTAL HEALTH-MENTAL RETARDATION
ASSOCIATION, THE PROPOSED ESTABLISHMENT OF A HOUSE FOR MENTALLY
RETARDED ( A HALF-WAY HOUSE) AT 6341 JUNEAU ROAD.  THE PROPOSED
ACTION IS A TRAVESTY ON THE RESIDENTS OF THE AREA, WHOLLY
UNNECESSARY AND UNJUSTIFIED  WE THE UNDERSIGNED ARE PROPERTY
OWNERS, RESIDENTS OF AGE AND QUALIFIED TO SIGN THIS PETITION.

| NAME | ADDRESS | |
|---|---|---|
| | 6329 Juneau | 738-7187 |
| | 6313 Juneau | 738-4006 |
| | 6313 Juneau | 738-4006 |
| | 6313 Juneau | |
| | 6317 Juneau | |
| William K. Biggs | 6317 Juneau | |
| R. Pittman | 6301 Juneau | |
| L.S. Decker | 6209 Juneau | |
| | 6205 Juneau | |
| | 6205 Juneau | |
| | 6344 Juneau | 738-7561 |
| Pat F. | 6344 Juneau | |
| Tom Grifton | 6377 INCA | 732-4260 |
| | 6344 Inca | 733-4260 |
| | 6345 INCA | 738-5349 |
| Anna Mills | 6665 Elms Ct | 737-6454 |
| | 6341 Inca Rd | 731-2763 |
| Mary | 6336 | 737-1847 |
| Connie Wilson | 6333 | 737-4197 |
| Wilson | 6333 | 737-4197 |
| | 6321 | 738-6892 |
| Robert A. Hyde | 6316 Halifax | 738-2600 |
| | 1313 Grainger | 738-6690 |
| | 6217 | 733-4787 |
| | 6217 | 451-5967 |
| | 6200 | 732-5671 |

Margin notes (left side):
HARDIN → 
I.S. WAGNER → 
ANN WAGNER → 
MET → 
MR. & MRS. BRENT → 

1                          B.R.E. 000036

PETITION AGAINST HALFWAY HOUSE AT 6341 JUNEAU ROAD

WE, THE OWNERS OF PROPERTY IN THE RIDGMAR AREA OF FORT WORTH, TEXAS, HEREBY PROTEST TO THE ZONING COMMISSION OF THE CITY OF FORT WORTH AND THE TARRANT COUNTY MENTAL HEALTH-MENTAL RETARDATION ASSOCIATION. THE PROPOSED ESTABLISHMENT OF A HOUSE FOR MENTALLY RETARDED ( A HALF-WAY HOUSE) AT 6341 JUNEAU ROAD.  THE PROPOSED ACTION IS A TRAVESTY ON THE RESIDENTS OF THE AREA, WHOLLY UNNECESSARY AND UNJUSTIFIED  WE THE UNDERSIGNED ARE PROPERTY OWNERS RESIDENTS OF AGE AND QUALIFIED TO SIGN THIS PETITION.

| NAME | ADDRESS |
| --- | --- |
| | |
| | |
| | |
| | 6367 |
| | |
| Iver M. Hewitt | 6313 |
| Melinda W. | 6359 Klamath Ok |
| | 6355 Klamath Ok |
| | 6352 Klamath Dr |
| | 1309 |
| Bissell Dunham | 1309 Curr Blvd E |
| | |
| | |
| | |
| | |
| William | 6332 Klamath Dr |
| | 6317 |
| | |
| | 6326 Klamath Road |
| | 6344 Klamath Rd |
| Mr. Mr. | 6348 Klamath Road |
| | |
| | |
| | |
| | |
| | |
| | Klamath Road |
| CHARLES H. MOXLEY | 6417 JUNEAU ROAD |
| | 6417 JUNEAU ROAD |
| | 6421 Juneau Rd |

BRE 000037

PETITION AGAINST HALFWAY HOUSE AT 6341 JUNEAU ROAD

WE, THE OWNERS OF PROPERTY IN THE RIDGMAR AREA OF FORT WORTH, TEXAS, HEREBY PROTEST TO THE ZONING COMMISSION OF THE CITY OF FORT WORTH AND THE TARRANT COUNTY MENTAL HEALTH-MENTAL RETARDATION ASSOCIATION, THE PROPOSED ESTABLISHMENT OF A HALF-WAY HOUSE AT 6341 JUNEAU ROAD WHICH CAN BE USED FOR HOUSING PAROLED CONVICTS, DRUG ADDICTS AND MENTALLY RETARDED. THE PROPOSED ACTION VIOLATES THE ZONING LAWS, DEED RESTRICTIONS AND IS A TRAVESTY ON THE RESIDENTS OF THE AREA  WHOLLY UNNECESSARY AND UNJUSTIFIED.  WE THE UNDERSIGNED ARE PROPERTY OWNERS, RESIDENTS, OF AGE AND QUALIFIED TO SIGN THIS PETITION

| NAME | ADDRESS | PHONE |
|------|---------|-------|
| Mrs & Dwight Suttell | 1105 Monticy. Rd | 731-2326 |
| *(illegible)* | *(illegible)* Rd | 737-0552 |
| Gordon Yow | 1109 Monticy Rd | 732-0931 |
| *(illegible)* | 1109 Monticy Rd | 732-0931 |
| *(illegible)* | 1109 Monticy Rd | 732-0931 |
| *(illegible)* Neal | 6421 *(illegible)* Rd | 732-4339 |
| *(illegible) Dilyad* | 6420 Lasalle Rd | 737-0707 |
| *(illegible)* | 6420 Lasalle Rd | 737-0707 |
| *(illegible)* | 6416 *(illegible)* | 732-3923 |
| *(illegible)* | *(illegible)* | 732-3923 |
| *(illegible)* | *(illegible)* | 737-3237 |
| *(illegible)* | 6409 Oakhill | 732-5559 |

PDF 000038

PETITION AGAINST HALFWAY HOUSE AT 6341 JUNEAU ROAD

| Signature | Address | Phone |
|---|---|---|
| [illegible] | 6300 Halifax | 733-081? |
| [illegible] | 6301 [illegible] | |
| Pansy X Hardison | 6300 Halifax Road | 732-5111 |
| [illegible] Harrison | 6300 Halifax | 737-5111 |
| Frank H. Newton | 6755 Halifax | 738-9548 |
| [illegible] | 6250 Halifax RD | 732-3419 |
| [illegible] | 6250 Halifax RD | 732-3419 |
| [illegible] McNeill | 6254 Halifax DR | 737-3904 |
| [illegible] | [illegible] | 734-5292 |
| [illegible] | 1113 [illegible] Rd | 731-1181 |
| [illegible] | [illegible] Burke RD | |

2

BRE 000039

PETITION AGINST HALFWAY HOUSE AT 6341 JUNEAU ROAD

| NAME | ADDRESS |
|---|---|
| *(illegible)* | 6332 Juca Rd. |
| *(illegible)* | 6324 Juca Rd. (737-6002) |
| *(illegible)* | *(illegible)* 721-1609 |
| *(illegible)* Breit | 1852 Kintie Ln |
| *(illegible)* | 1832 Kintie Ln |
| *(illegible)* Steward | 6340 Juca Rd. 76116 |
| *(illegible)* | 6347 Juca Rd. 76116 |
| R. D. Pratt | 6336 Juca Rd. |
| *(illegible)* | 6316 Juca Rd. |
| *(illegible)* | 6313 Juca Rd. |
| *(illegible)* | *(illegible)* |
| *(illegible)* | *(illegible)* |
| *(illegible)* | *(illegible)* Rd. 76116 |
| *(illegible)* | *(illegible)* |
| *(illegible)* | *(illegible)* 76116 |
| *(illegible)* | *(illegible)* Rd. 76116 |

P BPF 000040

## GAINST "HALFWAY HOUSE" AT 6341 JUNEAU

**ADDRESS**

| | |
|---|---|
| *[illegible]* | 6429 *[illegible]* Rd |
| *[illegible]* | " |
| " | 6333 *[illegible]* Rd |
| *[illegible]* | 6333 *[illegible]* Rd |
| *[illegible]* | 6345 *[illegible]* Rd. |
| *[illegible]* | 1205 *[illegible]* Rd |
| *[illegible]* | *[illegible]* |
| *[illegible]* | 1405 *[illegible]* Rd. |
| *[illegible]* | 1405 *[illegible]* Rd East |
| *[illegible]* | 6300 Firth Rd |
| *[illegible]* | 6321 Firth Rd. |
| *[illegible]* | 6313 Firth Rd |
| *[illegible]* | 6301 Firth Rd |

BRE 000041

000042

# PETITION AGAINST "HALFWAY HOUSE" AT 6341 JUNEAU

WE, THE OWNERS OF PROPERTY IN THE RIDGMAR AREA OF FORT WORTH, TEXAS HEREBY PROTEST TO THE ZONING COMMISSION OF THE CITY OF FORT WORTH AND THE TARRANT COUNTY MENTAL HEALTH-MENTAL RETARDATION ASSOCIATION THE PROPOSED ESTABLISHMENT OF A HOUSE FOR THE MENTALLY RETARDED (A HALF-WAY HOUSE) AT 6341 JUNEAU ROAD. THE PROPOSED ACTION IS A TRAVESTY ON THE RESIDENTS OF THE AREA, WHOLLY UNNECESSARY AND UNJUSTIFIED. WE THE UNDERSIGNED ARE PROPERTY OWNERS, RESIDENTS OF AGE, AND QUALIFIED TO SIGN THIS PETITION.

| NAME | ADDRESS |
|---|---|
| *[illegible signature]* | 6328 Pamlico Rd. |
| *[illegible signature]* | 6313 Pamlico Rd |
| *[illegible signature]* | 6313 Pamlico Rd. |
| *[illegible signature]* | " |
| Stan Howard | 6312 Pamlico Rd |
| Mindy Ka. Howard | 6312 Pamlico Rd. |
| Marc Howard | 6312 Pamlico Rd |
| *[illegible signature]* | 6312 Pamlico Rd |
| Fritz Erwin | 6404 Juneau 738-7257 *[illegible]* |
| *[illegible signature]* | 6416 Juneau Rd |
| *[illegible signature]* | 6416 Juneau Rd. |
| Mrs *[illegible]* Collins | 1309 Juneau Ct Ft Worth |
| Geo A. Collins | 1309 Juneau Ct |
| *[illegible signature]* | 301 Juneau Ct, Ft Worth |
| *[illegible signature]* | 6324 Klamath Rd - Ft Worth |
| *[illegible signature]* | 630 Pamlico |
| *[illegible signature]* | 6314 Klamath |
| *[illegible signature]* | 1305 Juneau Road, Fort Worth TX 76116 |
| Dr. Mrs *[illegible]* | 1300 Juneau Ct Ft Worth 76116 |

⅃ BRE 000043

PETITION AGAINST HALFWAY HOUSE AT 6341 JUNEAU ROAD

WE, THE OWNERS OF PROPERTY IN THE RIDGMAR AREA OF FORT WORTH, TEXAS, HEREBY PROTEST TO THE ZONING COMMISSION OF THE CITY OF FORT WORTH AND THE TARRANT COUNTY MENTAL HEALTH-MENTAL RETARDATION ASSOCIATION, THE PROPOSED ESTABLISHMENT OF A HOUSE FOR MENTALLY RETARDED ( A HALF-WAY HOUSE) AT 6341 JUNEAU ROAD. THE PROPOSED ACTION IS A TRAVESTY ON THE RESIDENTS OF THE AREA, WHOLLY UNNECESSARY AND UNJUSTIFIED. WE THE UNDERSIGNED ARE PROPERTY OWNERS, RESIDENTS, OF AGE AND QUALIFIED TO SIGN THIS PETITION.

| NAME | ADDRESS |
| --- | --- |
| *[illegible]* | 6516 *[illegible]* Rd |
| Blanche Hare | 6324 Juneau Rd. |
| *[illegible]* | 6317 *[illegible]* |
| *[illegible]* | 6314 Juneau Rd |
| Elizabeth A. *[illegible]* | 6304 Juneau Rd. |
| *[illegible]* | 6300 Juneau Rd |
| *[illegible]* | 6300 Juneau Rd |
| *[illegible]* | 6301 Juneau |
| *[illegible]* | 6324 Juneau Rd |
| *[illegible]* | 6335 Juneau Rd |
| *[illegible] Ciraci* | 6308 Juneau Rd |
| William *[illegible]* | 6337 Juneau *[illegible]* |
| *[illegible]* | 6339 Juneau Rd. |
| *[illegible]* | 6325 Juneau Rd. |
| Mary L. *[illegible]* | 6325 Juneau Rd. |
| *[illegible]* Alexander | 6340 Juneau Road |
| *[illegible]* | 6343 Juneau Rd |
| *[illegible]* | 6345 Juneau Rd. |
| *[illegible]* | 6333 Inca Rd. |
| Albert *[illegible]* Bell | 6333 Inca Rd. |
| *[illegible]* | 6328 INCA ROAD |
| *[illegible]* Hartman | 6328 Inca Rd. |
| *[illegible]* Ciraci | 6308 JUNEAU |
| *[illegible]* | *[illegible]* |
| Sam O. *[illegible]* | 6266 *[illegible]* |
| *[illegible] Cameron* | 6266 *[illegible]* |
| *[illegible]* | 6*[illegible]* |

*[margin notes: "MIA CIRACI →", "TO CIRACI →"]*

*[margin note right: "DUPLICATE" ]*

1

EXHIBIT *Ciraci* 2

PLAINTIFF'S EXHIBIT 23

PETITION AGAINST HALFWAY HOUSE AT 6341 JUNEAU ROAD

EXHIBIT " A "

WE, THE OWNERS OF PROPERTY IN THE RIDGMAR AREA OF FORT WORTH,
TEXAS, HEREBY PROTEST TO THE ZONING COMMISSION OF THE CITY OF FORT
WORTH AND THE TARRANT COUNTY MENTAL HEALTH-MENTAL RETARDATION
ASSOCIATION, THE PROPOSED ESTABLISHMENT OF A HOUSE FOR MENTALLY
RETARDED ( A HALF-WAY HOUSE) AT 6341 JUNEAU ROAD. THE PROPOSED
ACTION IS A TRAVESTY ON THE RESIDENTS OF THE AREA, WHOLLY
UNNECESSARY AND UNJUSTIFIED WE THE UNDERSIGNED ARE PROPERTY
OWNERS RESIDENTS OF AGE AND QUALIFIED TO SIGN THIS PETITION.

| NAME | ADDRESS |
| --- | --- |
| Ray Kent Henderson | 6337 KLAMATH RD. |
| _(illegible)_ | " " " |
| _(illegible)_ | 6321 Klamath |
| _(illegible)_ | 6317 _(illegible)_ |
| Kite Fret | " " |
| Bev M. Kleit | 6313 Klamath |
| Milinda N. Kleiburla | 6259 Klamath Ct. |
| _(illegible)_ | 6259 Klamath Ct. |
| _(illegible)_ | 6252 Klamath _(illegible)_ |
| _(illegible) Durham_ | 1209 Ems Rd. E. |
| Russell Durham | 1209 Ems Rd. E. |
| _(illegible)_ | 6300 Klamath |
| Robert L. Lyle | 6316 Klamath Rd. |
| _(illegible)_ | 6316 Klamath Rd. |
| _(illegible)_ | 6325 _(illegible)_ |
| Elaine _(illegible)_ | 6325 Klamath |
| _(illegible)_ | 6320 Klamath Rd. |
| _(illegible)_ | 6317 _(illegible)_ Rd. |
| _(illegible)_ | " " |
| _(illegible)_ | 6336 Klamath Road |
| _(illegible)_ | 6344 Klamath Rd. |
| Mr. Mrs. _(illegible)_ | 6348 Klamath Road |
| _(illegible)_ | 6319 Klamath |
| _(illegible)_ | 7335 Klamath |
| _(illegible)_ | 6345 Klamath |
| _(illegible)_ | 6341 Klamath Road |
| _(illegible)_ May | 6341 Klamath |
| _(illegible)_ | 6415 KLAMATH ROAD |
| CHARLES H. MOOLEY | 6417 JUNEAU ROAD |
| _(illegible)_ Mooley | 6447 JUNEAU ROAD |
| William E. Brown | 6421 JUNEAU Rd. |

PLAINTIFF'S EXHIBIT 347

EXHIBIT 3

PETITION AGAINST HALFWAY HOUSE AT 6341 JUNEAU ROAD

WE, THE OWNERS OF PROPERTY IN THE RIDGMAR AREA OF FORT WORTH, TEXAS, HEREBY PROTEST TO THE ZONING COMMISSION OF THE CITY OF FORT WORTH AND THE TARRANT COUNTY MENTAL HEALTH-MENTAL RETARDATION ASSOCIATION, THE PROPOSED ESTABLISHMENT OF A HOUSE FOR MENTALLY RETARDED ( A HALF-WAY HOUSE) AT 6341 JUNEAU ROAD. THE PROPOSED ACTION IS A TRAVESTY ON THE RESIDENTS OF THE AREA, WHOLLY UNNECESSARY AND UNJUSTIFIED. WE THE UNDERSIGNED ARE PROPERTY OWNERS, RESIDENTS, OF AGE AND QUALIFIED TO SIGN THIS PETITION.

| NAME | ADDRESS | |
|------|---------|---|
| Mrs. Edward S. W. Hardin | 6369 Juneau | 738-7087 |
| H. J. Thompson | 6313 Juneau | 732-4006 |
| Mrs. Morris | 6313 Juneau | 732-4006 |
| Peggy Gilhouse | 6312 Juneau | |
| David Briggs | 6317 Juneau | |
| William M. Briggs | 6317 Juneau | |
| R. Pittman | 6301 Juneau | |
| L. S. Decatur | 6269 Juneau | |
| Norwood T. Dutton | 6205 Juneau | |
| Norwood T. Dutton | 6205 Juneau | |
| Alfred Nunes | 6344 Juneau | 738-7569 |
| Pat E. Lane | 6344 Juneau | " |
| Tom Griffin | 6344 INCA | 732-4260 |
| Aba Griffin | 6344 INCA | 732-4260 |
| J. S. Wells | 6345 INCA | 738-5349 |
| Donna Mills | 6608 Ems Ct | 737-6454 |
| Mr. & Mrs. J. F. Burnetts | 6341 Juneau Rd | 732-2765 |
| Mary Wood | 6336 Halifax | 737-7047 |
| Jim E. Wilson | 6337 Halifax | |
| Connie Wilson | 6333 " " | 732-4597 |
| Leni Wilson | 6333 " " | 737-4197 |
| Marilyn E. Van Karse | 6321 Halifax | 738-6892 |
| Roberta A. Hyde | 6316 Halifax | 738-2600 |
| E. D. Hendy | 6313 Halifax | 738-8690 |
| Virginia & Bill Jennings | 6308 Halifax | 732-4787 |
| Va Smith Heckel | 6512 Halifax | 737-5987 |
| Pat Blanchard | 6309 Halifax | 732-4544 |

1

EXHIBIT Hardin 6

PLAINTIFF'S EXHIBIT 236