**Denise LaFLAMME et al., Plaintiffs,**

v.

**NEW HORIZONS, INC.
et al., Defendants.**

**No. 06cv1809 (JBA).**

United States District Court,
D. Connecticut.

Sept. 19, 2007.

Erin Kemple, Greg J. Kirschner, Ajaz Fiazuddin, Nancy B. Alisberg, State of Connecticut Office of Protection & Advocacy, Hartford, CT, for Plaintiffs.

Christopher F. Girard, Eric D. Daniels, Frank F. Coulom, Jr., Robinson & Cole, Hartford, CT, for Defendants.

*RULING ON PLAINTIFF OFFICE OF PROTECTION AND ADVOCACY'S MOTION FOR PRELIMINARY IN-JUNCTION [DOC. # 4]*

JANET BOND ARTERTON, District Judge.

Plaintiff State of Connecticut Office of Protection and Advocacy ("OPA") seeks a preliminary injunction [Doc. # 4] enjoining defendants New Horizons, Inc. ("NHI") and its Executive Director Michael Shaw from enforcing its independent living and medical disclosure requirements in violation of the Fair Housing Amendments Act ("FHAA") and accompanying regulations. After consideration of the parties' briefing and oral argument, and for the reasons that follow, plaintiff's Motion will be granted in part.

## I.   Factual Background

Plaintiff Denise LaFlamme, a Connecticut resident who suffers from cerebral palsy, epilepsy, and depression, and ambulates by wheelchair, signed a lease on August 16, 2004 for a two-bedroom apartment, to be shared with a roommate, at New Horizons Village ("NHV"), an "independent living" complex owned and operated by defendant NHI for persons with severe physical disabilities. The NHV apartment complex, which is handicapped-accessible and proximate to the University of Connecticut Health Center, offers its tenants the emergency services of on-call "village care attendants" and two registered nurses staffed during normal business hours. In addition, NHV has an arrangement with the State of Connecticut Department of Social Services ("DSS") to provide a tenant with up to six hours of assistance per day from a personal care attendant ("PCA").

When plaintiff LaFlamme applied for an apartment at NHV in March 2004, she was required to disclose her medical conditions and full medical record for evaluation of whether she was able to live independently in the complex. She was approved for residency and assessed as requiring 19.5 hours per week of PCA assistance. On November 11, 2004, LaFlamme was hospitalized for a gastrointestinal ailment and depression. On November 29, NHV employee Carolyn Fields informed LaFlamme's mother Carol that LaFlamme would not be permitted to return because of her medical needs, which was confirmed by defendant Shaw when Carol LaFlamme called him the next day. On December 2, 2004, Shaw wrote Carol LaFlamme that "[i]t is in the best interest of Denise that she gets into an environment where her social and emotional needs can be meet [sic]. . . . [W]e hope upon receipt of this letter you will help resolve this situation

by removing Denise's personal belonging [sic]." (Shaw Letter, Defs. Ex. A–1.) Carol LaFlamme removed all her daughter's belongings from the apartment by December 15, and in late December contacted both Shaw and Fields, requesting, without success, that her daughter be allowed to return to NHV. On June 13, 2005, plaintiff LaFlamme filed a CHRO complaint against NHV alleging constructive eviction, which she later withdrew.

Authorized by Connecticut statute in 1983,[1] NHV is "a 68–unit independent living apartment complex designed for people with severe physical disabilities." (NHV Handbook, Pl.Ex. 3 [Doc. # 5–4], at 2.) As the handbook explains, NHV

> is not licensed or operated to provide medical care or supervision. As a tenant of New Horizons Village, you must be able to live independently. If it becomes apparent that you are not willing or able to independently manage your activities of daily living at New Horizons Village under these conditions, we may intervene and if necessary terminate this lease.

(Id. at 7.) NHI's bylaws state the organization's purpose as including "promot[ing] opportunities for mentally alert, physically disabled adults to determine their own life styles and living situations, and ... promot[ing] the civil and human rights of persons who are physically disabled." (NHI Bylaws, Pl.Ex. 4 [Doc. # 5–6], at 1.) In addition, the facility's brochure provides that NHV

> is designed to serve adults who have limited mobility due to severe physical disabilities. To be considered for residency, an individual must meet all of the following general criteria: ... A severe physical or neurological disability ...

The ability and willingness to live without supervision.... Emotional stability with no manifestation of psychotic or pathological behavior including substance abuse ... Control of bodily functions ... Medical care needs which can ordinarily be accommodated . through outpatient community resources.

(NHV Brochure, Pl.Ex. 3(a) [Doc. # 5–5] at 7.)

Applicants are required to describe the nature of their disability, experience living on their own, history with PCAs and estimated required hours of PCA assistance, and medical conditions, and must also sign two release forms: a "Release of Background Information" and a "Release of Medical Information." (Application, Defs. Ex.2–B.) These applications, along with the applicants' two-year medical histories (presented by the Health Services Coordinator), are reviewed by the seven-person Tenant Selection Committee, which also interviews and makes home visits to prospective tenants. (Id. at 9–10.) The Village Administrator performs a second-level review of the Committee's decisions. (Kozlowski Aff., Defs. Ex. 2, ¶ 12.)

The NHV form lease provides that tenants "must be able to live independently":

> The tenant selection process therefore includes an assessment of the medical condition and healthcare needs of each applicant, ... If it becomes apparent that you have withheld pertinent information or supplied incomplete, inaccurate or misleading information relative to the selection criteria for your suitability for residency, we may terminate this lease to evict you....
>
> In the event of a change in your medical condition which would affect your ability

---

1. Conn. Gen.Stat. § 19a–507 authorized NHI "to construct and operate an independent living facility for severely physically disabled adults, in the town of Farmington, provided such facility shall be constructed in accordance with applicable building codes."

to live independently, you agree to provide the Village Manager with such information regarding the change in your medical condition within (10) days of said change....

Upon renewal of your lease, scheduled on an annual basis, it must be mutually agreed that your medical situation allows for continued residency at New Horizons Village.

(Lease, Pl. Mot. Ex. 2 [Doc. # 5–3], at 7–8.)

## II. Standard for Preliminary Injunction

In its Motion, plaintiff OPA seeks an order enjoining the defendants from "[r]equiring applicants and tenants of NHI to be able to live independently [and] be free from mental illness or manifestations of mental illness"; from "[r]equiring applicants and tenants of NHI to sign releases for confidential medical information and records"; and from "[c]ommencing" or "[p]rosecuting ... actions for eviction against tenants of NHI for grounds related to" these requirements. (Pl. Mot. at 1–2.)

■ In general, the propriety of issuing a preliminary injunction depends on whether a party establishes "that it will be irreparably harmed in the absence of an injunction," that it is likely to prevail on the merits, that there are "sufficiently serious questions going to the merits of the case," and that the "balance of hardships tip[s] decidedly in its favor." *Forest City Daly Housing, Inc. v. Town of North Hempstead,* 175 F.3d 144, 149 (2d Cir. 1999). However, the moving party's burden depends on whether

(i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the

defendant prevails at a trial on the merits.

*Tom Doherty Assocs. v. Saban Entm't, Inc.,* 60 F.3d 27, 33–34 (2d Cir.1995). Under those circumstances, the injunction is characterized as "mandatory" rather than "prohibitory," and to obtain the relief sought the movant "must meet a higher standard," namely, "by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from a denial of the injunction." *Phillip v. Fairfield Univ.,* 118 F.3d 131, 133 (2d Cir.1997) (*quoting Tom Doherty Assocs.,* 60 F.3d at 34). Relevant to this higher showing, the Second Circuit has found "support for the proposition that where a plaintiff demonstrates a likelihood of success on the merits of a fair housing claim, irreparable harm may be presumed." *Forest City Daly Housing,* 175 F.3d at 153 (collecting cases); *see also Conn. Hosp. v. City of New London,* 129 F.Supp.2d 123, 128 (D.Conn.2001) (finding this presumption rebuttable); *Stewart B. McKinney Foundation v. Town Plan and Zoning Commission of the Town of Fairfield,* 790 F.Supp. 1197, 1208 (D.Conn. 1992) (*citing Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1423 (11th Cir. 1984)) (same).

Although the difference between the two types of injunctions may be largely academic, and is further complicated by the fact that mandatory injunctions may use prohibitory language, *see Tom Doherty Associates,* 60 F.3d at 34, the parties in this case apparently agree that the injunctive relief sought by OPA is mandatory. (Pl. Mem. in Supp. at 9; Defs. Mem. in Opp. at 16.) Therefore, OPA's motion will be evaluated according to this higher standard.

## III. Discussion

Plaintiff seeks a preliminary injunction aimed at two aspects of defendants' opera-

tion of NHV: (1) its independent living requirement, and (2) its medical disclosure requirement.

## A. Independent living requirement

■ Plaintiff alleges that NHI has violated and continues to violate the FHAA, which, among other things, prohibits a landlord from discriminating against a handicapped tenant on account of his or her disability. 42 U.S.C. § 3604(f). OPA contends that "a review of the NHV lease, housing application, tenant selection criteria, and statements by NHI representatives, demonstrates clearly that NHI routinely denies housing on disability based grounds." (Pl. Mot. at 13.) According to OPA, NHV's requirement that tenants be able to live independently has a disparate impact on those with extremely severe physical disabilities or mental disabilities, particularly pronounced mood or thought disorders, and thus seeks "an order that New Horizons stop using discriminatory criteria to admit tenants and that it stop coercing tenants to vacate." (Reply at 2.)

■ A prima facie case of disparate impact is shown if "the challenged practice of the defendant actually or predictably results in discrimination; in other words that it has a discriminatory effect." *Stewart B. McKinney Foundation,* 790 F.Supp. at 1217, 1219 (citing *Huntington Branch, N.A.A.C.P. v. Huntington,* 844 F.2d 926, 934 (2d Cir.1988)). If proved, then defendants avoid liability under the FHAA only if they "present[ ] bona fide and legitimate justifications for their action with no less discriminatory alternatives available." *Id.* at 1220.

At the hearing on plaintiff's Motion for Preliminary Injunction, OPA's counsel emphasized the disparate impact of the six-hour-per-day PCA limit on the severely physically disabled, and the disparate impact of the tenancy eligibility criterion of "[e]motional stability with no manifestation of psychotic or pathological behavior" on those with mental illness. Defendants assert that the six-hour criterion distinguishes their facility from a hospital or nursing home, and maintain that the behavioral requirement is lawful under the FHAA exception that a landlord need not make a dwelling "available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others."[2] 42 U.S.C. § 3604(f)(9).

Plaintiff LaFlamme's eviction experience is offered by OPA as the only evidence in support of its disparate impact discrimination theory, based on severity of physical disability. However, she only required 19.5 hours of PCA care weekly—i.e., less than the authorized maximum of six hours per day—and thus provides no proof of the claimed disparate impact. OPA's position is not bolstered by the authority cited in its Reply Memorandum, for these cases had more developed factual records proving disparate impact. *See U.S. v. Resurrection Retirement Cmty., Inc.,* No. 02–CV–7453, 2002 WL 32682884 (N.D.Ill.2002) (Pl. Reply Ex. 3) (granting injunction against disability-based screening and required disclosure of medical history after federal investigation revealing specific findings that retirement center discriminated against persons in wheelchairs who

---

2. The cases cited by defendants at oral argument in support of their position that the independent living requirement does not violate the FHAA are inapposite, as they either did not concern the FHAA, *see Easley v. Snider,* 36 F.3d 297 (3d Cir.1994); *Lynch v. Mah-* er, 507 F.Supp. 1268 (D.Conn.1981), or examined the FHAA in the context of HUD-funded housing/ restrictive covenant, *see United States v. Scott,* 788 F.Supp. 1555 (D.Kan. 1992), and are in any case factually dissimilar from the case at hand.

could not live independently); *Jainniney v. Maximum Independent Living,* No. 00–CV–0879 at 12 (N.D.Ohio 2001) (Pl. Reply Ex. 5) (ruling on FHAA grounds in favor of a wheelchair-bound paraplegic man who had been denied tenancy in defendant's facility, which was claimed to be an independent living facility for mobility-impaired persons). Unlike in *Cason v. Rochester Housing Authority,* 748 F.Supp. 1002, 1011 (W.D.N.Y.1990), where the court issued an injunction under the FHAA against a municipal landlord's independent living requirement, the NHV facility is already designated for those with physical disabilities, and there is no evidence at this preliminary stage that the six-hour PCA limit has the effect of discriminating against the profoundly disabled.

With respect to the claim of discrimination against those with mental illness, notwithstanding defendants' requirement that NHV tenants be emotionally stable, the record shows that four of the six applicants offered admission to NHV between January and October 2006, of 20 total applicants, disclosed some mental disability or psychiatric condition. (*See* Kozlowski Aff. and List, Defs. Exs. 2 and 2–D.) In addition, the sealed documents reveal that "L" was admitted despite her disclosed mental condition and treatment, and that "V" continues to reside at the complex despite her severe mental health problems. No evictions of any tenants are pending or contemplated. Thus, neither irreparable injury nor a clear showing of likely success on the merits has been demonstrated with respect to defendants' independent living requirement.

## B. Medical records requirement

Plaintiff OPA argues that defendants' requirement of full medical disclosure has a disparate, discriminatory impact on the privacy rights of NHV applicants with the most serious physical disabilities or mental illness. The Department of Housing and Urban Development regulations accompanying the FHAA provide, in relevant part:

> It shall be unlawful to make an inquiry to determine whether an applicant for a dwelling, a person intending to reside in that dwelling after it is sold, rented or made available, or any person associated with that person, has a handicap or to make inquiry as to the nature or severity of a handicap of such a person.

24 C.F.R. § 100.202(c). In response, defendants argue that their procedure fits within exceptions to this prohibition, specifically that such inquiry is permissible in order to determine whether an applicant "is qualified for a dwelling available only to ... persons with a particular type of handicap," § 100.202(c)(2), or whether an applicant's "tenancy would constitute a direct threat to the health or safety of other individuals," § 100.202(d).

OPA acknowledges that "NHI would be within its rights to ask tenants to merely identify their disability for purposes of satisfying eligibility," but maintains that NHI instead "impermissibly requires potential tenants to provide descriptions of their disabilities on applications for NHV, and demands comprehensive releases which allow NHI to learn all their confidential medical and psychiatric history." (Pl. Mot. at 18.) *See Niederhauser v. Independence Square Housing,* 4 Hous.-Fair Lending (Aspen L. & Bus.) ¶ 16,305 at 16,305.6 (N.D.Cal.1998) (Pl.Reply.Ex.4) (granting plaintiffs declaratory judgment that housing complex for elderly and disabled persons could not inquire beyond eligibility criteria of "elderly" or "disabled" and could not require ability to live independently) As the *Niederhauser* court explained, "[a]lthough a landlord may make necessary inquiries to determine an appli-

cant's qualifications for tenancy, the landlord may not inquire into the nature and extent of an applicant's or tenant's disabilities beyond that necessary to determine eligibility." *Id.* at 16,305.5. According to OPA, defendants' policy has a discriminatory impact on individuals with disabilities, as it does not use the least restrictive means of addressing its safety concerns, i.e., to "seek information regarding whether the applicant can meet the obligations of tenancy." (Reply at 7, citing legislative history of FHAA.)

■ The Court agrees that defendants' "Release of Background Information Form" and "Release of Medical Information Form" are too broad as currently written to come under the narrow exceptions to § 100.202(c). NHI would be permitted under the HUD regulations to require the disclosure of records which would (a) verify the nature of an applicant's severe physical disability and therefore his or her eligibility, and (b) substantiate whether the applicant "would constitute a direct threat to the health or safety of other[s]" at NHV. *See* § 100.202(c)(2), (d). But NHI's forms go too far in mandating that applicants "authorize full disclosure of any and all [background information] records" and "authorize the release of [medical] information [concerning] any past or present diagnoses, any surgical operation reports, any psychological and psychiatric reports, current health status summaries and medical charts, and a current history and physical examination." (Application, Defs. Ex.2–B.)

In addition to this convincing showing of their likelihood of success on the merits, plaintiffs have demonstrated—perhaps even by way of a presumption—a high degree of irreparable harm owing to the fact that improperly required disclosure of intimate, private details cannot be remed-ied. To this the defendants respond only with the conclusory argument that the broad disclosure is necessary to determine eligibility and/or protect residents.

■ For these reasons, a preliminary injunction will enter enjoining the use of the "Release of Background Information Form" and "Release of Medical Information Form" in the NHV application packet. As currently used, they require confidential personal and medical information beyond what is necessary to determine whether a person meets the requirements of tenancy at NHV, and with insufficient regard as to the requirements of § 100.202(c). Accordingly, defendants are directed to prepare and file a revised Application for Residence and accompanying release forms, narrowed to appropriately address the application processing needs of NHV in compliance with the requirements of FHAA and its associated regulations.

## IV. Conclusion

Plaintiff OPA's Motion for Preliminary Injunction [Doc. # 4] is GRANTED IN PART and DENIED IN PART. Defendants must serve on plaintiffs' counsel the revised application and release forms, narrowed to satisfy the exceptions set out in 24 C.F.R. § 100.202(c)(2) and (d) by **October 17, 2007.** Defendants' final revised forms shall be filed with the Court by **October 31, 2007.** Objections, if any, shall be filed by **November 9, 2007.**

IT IS SO ORDERED.